ELECTRONIC CITATION:  13 FED App. 0002P (6th Cir.)
File Name:  13b0002p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| IN RE: ROYAL MANOR MANAGEMENT, INC.,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | Nos. 13-8054; 14-8018 |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio.
No. 08-50421

Argued:  August 26, 2014

Decided and Filed:  February 5, 2015

Before:  HARRISON, HUMPHREY and PRESTON, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  Dennis Grossman, Great Neck, New York, for Appellant in 13-8054.  Louise M. Mazur, BROUSE MCDOWELL, LPA, Akron, Ohio, for Appellee in 13-8054.  **ON BRIEF:** Dennis Grossman, Great Neck, New York, for Appellant in 13-8054 and 14-8018.  Louise M. Mazur, Marc B. Merklin, BROUSE MCDOWELL, LPA, Akron, Ohio, Caroline L. Marks, BROUSE MCDOWELL LPA, Cleveland, Ohio, for Appellee in 13-8054.  Louise M. Mazur, Marc B. Merklin, Kate M. Bradley, BROUSE MCDOWELL, LPA, Akron, Ohio, for Appellee in 14-8018.

_____

## OPINION

_____

    GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge.  These two related appeals address monetary sanctions and post-judgment efforts to collect those sanctions arising out of an attorney's representation of claimants who filed a $2,142,000 non-priority unsecured proof of

claim in jointly administered Chapter 11 bankruptcy cases. That claim was disallowed by the bankruptcy court, with that decision being affirmed by both the District Court for the Northern District of Ohio and the Sixth Circuit Court of Appeals. As a result of the multitude of filings, strategies employed and positions taken over a six year period, the bankruptcy court sanctioned the attorney, Dennis Grossman, the sum of $207,004 pursuant to 28 U.S.C. § 1927 and the court's inherent authority under 11 U.S.C. § 105, representing the attorney fees expended by counsel for the Official Committee of Unsecured Creditors (the "Committee") and, post-confirmation, the Liquidation Trustee and his counsel ("Trustee" or "Liquidation Trustee"), directly or indirectly related to the claim litigation. Grossman appeals the orders sanctioning him. He also appeals an order denying a motion which sought the recusal of the Bankruptcy Judge pursuant to 28 U.S.C. § 455 (collectively, the "First Appeal").

In a separate appeal, Grossman challenges the retention of special counsel to collect the judgment against him and also an order requiring him to submit to a debtor's examination and provide written discovery (collectively, the "Second Appeal").

### ISSUES ON APPEAL

The issues in these appeals are whether the bankruptcy court erred in sanctioning Grossman $207,004 pursuant to 28 U.S.C. § 1927 and the court's inherent authority under 11 U.S.C. § 105(a); denying one of Grossman's motions seeking recusal under 28 U.S.C. § 455; approving the retention of special counsel to pursue collection of the sanctions judgment; and allowing the pursuit of post-judgment discovery to execute upon the $207,004 judgment.

### JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide these appeals. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."

*Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted).

An order sanctioning counsel for a sum certain amount generally is a final order. *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002). Orders related to the retention of bankruptcy professionals, objections to interim fee applications, and denial of a recusal motion or motion compelling discovery ordinarily are considered interlocutory orders. *See In re Union Home and Indus., Inc.*, 376 B.R. 298, 301-02 (B.A.P. 10th Cir. 2007) (employment of a professional and order approving interim fee applications are interlocutory); *Lopez v. Behles (In re Amer. Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir. 1994) (motion denying recusal of bankruptcy judge interlocutory and not immediately appealable); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 471 (6th Cir. 2006) ("Discovery orders generally are not final decisions and cannot be reviewed unless the trial court enters a final judgment disposing of all claims."). However, in these circumstances, these orders are deemed final because they all relate to the sanctions judgment and that is the only issue remaining to complete these Chapter 11 cases. *See also Huntington Nat'l Bank v. Richardson (In re Cyberco Holdings, Inc.)*, 734 F.3d 432 (6th Cir. 2013) (quoting *Lindsey v. O'Brien, Tanski, Turner & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996) ("finality requirement is considered 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.'") (quoting *Cottrell v. Schilling (In re Cottrell)*, 876 F.2d 540, 541-42 (6th Cir. 1989)).

An award of sanctions under a bankruptcy court's inherent authority is reviewed for an abuse of discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S. Ct. 2123, 2138 (1991); *Stalley ex rel. U.S. v. Mountain States Health Alliance*, 644 F.3d 349, 351 (6th Cir. 2011). In addition, an order granting sanctions under 28 U.S.C. § 1927 is also reviewed for an abuse of discretion. *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007). "An abuse of discretion is defined as a definite and firm conviction that the [court below] committed a clear error of judgment." *Mayor and City Counsel of Baltimore, Md. v. W. Va. (In re Eagle Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) (internal quotation marks and citation omitted). The abuse of discretion must be more than harmless error to provide cause for reversal. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (citations omitted). Sanctions based upon an erroneous

view of the law or an erroneous assessment of the evidence are necessarily an abuse of discretion. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990); *Salkil v. Mount Sterling Tp. Police Dept.*, 458 F.3d 520, 527-28 (6th Cir. 2006). *See also Parrott v. Corley*, 266 F. App'x 412, 415 n.1 (6th Cir. 2008) (arguments concerning an error in statutory interpretation or due process related to sanctions are reviewed de novo).

Other determinations that Grossman has appealed are also subject to an abuse of discretion review. *Bell v. Johnson*, 404 F.3d 997, 1004 (6th Cir. 2005) (denial of a motion to recuse); *Gen. Elec. Co v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517 (1997) (evidentiary determinations); *Am. Civil Liberties Union of Ky. v. McCreary County, Ky.*, 607 F.3d 439, 451 (6th Cir. 2010) (determination whether a late filing was due to "excusable neglect."); *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (scope of discovery); *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1315 (6th Cir. 1995) (orders concerning the retention and compensation of bankruptcy professionals).

Finally, "[t]he Panel must affirm the underlying factual determinations unless they are clearly erroneous." *Trudel v. United States Dep't of Educ. (In re Trudel)*, 514 B.R. 219 (B.A.P. 6th Cir. 2014) (quoting *Hart v. Molino (In re Molino)*, 225 B.R. 904, 906 (B.A.P. 6th Cir. 1998)).

## FACTS

I.    Events Prior to the Bankruptcy Court's Decision Sustaining the Trustee's Objection to the Gordons' Proof of Claim

On February 12, 2008, Royal Manor Management, Inc. ("Royal Manor"), Darlington Nursing and Rehabilitation Center, Ltd. ("Darlington"), Dani Family, Ltd. ("Dani") and other related entities (collectively, the "Debtors") filed a petition for relief under Chapter 11 of the Bankruptcy Code. Sally and Abraham Schwartz were the majority owners (collectively, "Schwartz"). These cases were jointly administered and, on December 5, 2008, the Debtors confirmed their Third Amended Plan of Reorganization. The plan established a liquidating trust (the "Trust" or "Liquidation Trust") and upon the effective date of the plan, David Wehrle became the Liquidation Trustee.

During this same time frame, the litigation began as to the disputed claim. On June 26, 2008, Gertrude Gordon filed a proof of claim, through a power of attorney, on behalf of her children, David and Alison Gordon (the "Gordons") (the "Gordon Claim"). The Gordons are the niece and nephew of Schwartz. Gertrude Gordon is Sally Schwartz's sister. The Gordon Claim asserted a non-priority unsecured claim against Darlington in the total amount of $2,142,000. The basis for the Gordon Claim was a July 27, 2000 agreement, which was notarized on August 24, 2000 (the "Agreement"). The proof of claim did not contain the complete Agreement. It omitted a page which provided important evidence which would support the position that the loan was not to Darlington, but instead was an individual loan to Schwartz.

On September 5, 2008, the Committee, represented by Brouse McDowell, LPA ("Brouse"), objected to this claim for two fundamental reasons. First, the Committee argued that the Gordon Claim was a personal loan from the Gordons to Schwartz and not a loan to Darlington. Further, the Committee took the position that, at best, the Gordon Claim constituted an equity investment in Darlington. The objection was noticed for an October 7, 2008 hearing.

On September 9, 2008, an amended notice was filed and served to correct the date that the objection was filed. The hearing date remained the same. The hearing did not occur because neither the Gordons, nor any counsel representing the Gordons, responded to the objection or appeared to oppose the Committee's objection. On October 29, 2008, an order was entered disallowing the Gordon Claim.

On November 10, 2008, Grossman filed two motions. First, Grossman filed[1] a motion to appear pro hac vice, which was granted. Second, Grossman filed a motion to vacate the order (the "Motion to Vacate") sustaining the Committee's objection to the Gordon Claim. In the Motion to Vacate, Grossman argued that 1) the Committee failed to comply with Bankruptcy Rule 3007(a) because the Committee failed to give 30 days' notice of the hearing date and failed to serve the claim objection with the notice of hearing and 2) excusable neglect existed.[2]

---

[1] As the issues in these appeals largely are about sanctions against Grossman for his filings, this decision refers to filings by Grossman, whether they were on behalf of his clients or, later, pro se.

[2] In the Motion to Vacate, the omitted portion of the proof of claim is included as an exhibit.

The Committee's response to the Motion to Vacate noted that the original objection of September 5 objection informed the Gordons both of the October 7th hearing date and that any objection must be filed prior to the hearing. Therefore, the Committee took the position that it gave 30 days' notice to the Gordons and did serve the notice of the hearing with the objection. It acknowledged that the original notice did incorrectly list that the objection was filed on October 7, 2008, but nevertheless had the correct hearing date and time. The Committee further argued that excusable neglect did not exist in these circumstances. Grossman argued that, due to the errata in the original notice, it was superseded by the amended notice, and that notice failed to comply with Bankruptcy Rule 3007(a) because it provided only 28 days' notice. Grossman argued for exact compliance with the noticing requirements since the Gordons were pro se during that time. He also argued the Gordons' failure to file a timely response was the result of excusable neglect. The court scheduled a January 27, 2009 evidentiary hearing.

Grossman noticed Committee counsel for a deposition in order to challenge the Committee's assertion that vacating the order disallowing the Gordon Claim would be unfairly prejudicial because the Committee relied upon the disallowance of the Gordon Claim in negotiating with other claimants. In response, the Committee, in an email dated December 3, 2008, asserted to Grossman that he had less intrusive methods to acquire the discovery. On December 9, 2008, Grossman filed an emergency motion to compel Committee counsel to appear at a single deposition and, separately and alternatively, a request for a determination of the Motion to Vacate as a matter of law. As to the deposition, Grossman stated that the Committee had refused to provide a witness and, instead, provided Grossman with 13 different individuals with whom the Committee had settlement discussions. Additionally, the emergency motion essentially repeated the same arguments Grossman had made in the prior Motion to Vacate. The Committee moved for a protective order.

In response to this flurry of filings, the court conducted a scheduling conference and re-scheduled the hearing on the Motion to Vacate for February 24, 2009. The court determined, in the interest of judicial economy, without prejudice to the procedural issues Grossman raised, to first address the merits of the Gordon Claim.

However, on January 13, 2009, Grossman filed another emergency motion. Grossman sought leave to amend the Gordon Claim to recover "unpaid dividends arising out of the same

6

document as their original claim for the unpaid loan." Emergency Mot. of Claimants Alison Gordon and David Gordon for Leave to File Amended Claim Arising out of Identical Contract/Transaction as Original Claim and not Exceeding Amount of Original Claim at 1, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 441 (the "Amended Claim Motion"). The Amended Claim Motion was noticed to be heard February 24, 2009, the same day as the hearing on the Motion to Vacate. However, on February 9, 2009, Grossman filed an emergency agreed motion to continue the hearing on the Amended Claim Motion. The Committee filed a limited objection to that motion, which indicated that while the Committee had agreed to the continuance, it did not agree with the comments and arguments contained within the motion about the merits. Following a February 12th phone conference, the court entered an amended scheduling order. The court concluded that, in light of the recent filings, focusing upon the merits would not save time. Therefore, the court returned to its original position and decided to address the Motion to Vacate first and set that motion for hearing on March 31, 2009.

On February 23, 2009, the Gordon Claim litigation took a new turn. Grossman filed a status report stating that the Gordons would file a motion to file a new claim. The report stated that the Gordons signatures were forged on the Darlington and Dani Family operating agreements. Based on this information, the report further stated the new claim would include grounds of rescission, unjust enrichment and the imposition of a constructive trust. According to the report, "[t]here is no way the GORDONS ever would have entered into the July 2000 transaction ($1 million principal) if the GORDONS had been aware of the forgeries or of the terms of the operating agreements on which the forgeries occurred." Status Report of Claimants Alison and David Gordon Concerning Status Conference Scheduled For Feb. 24, 2009 at 4, No. 08-50421, In re Royal Manor Mgmt., Inc., ECF No. 467.

On March 17, 2009, Grossman filed two more motions on behalf of the Gordons. The first motion sought leave to file a new claim. Mot. of Alison Gordon and David Gordon For Leave To File New Recision / Unjust Enrichment Claim Based on Recently Disclosed (And Previously Concealed) Forgeries Of Their Signatures And Other Material Concealed Facts, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 474 (the "New Claim Motion"). In addition, Grossman filed another emergency motion to continue the March 31, 2009 hearing based on the theory that this new claim would moot out the Gordons' original claim or, in the alternative,

render unnecessary a ruling on the pending motion to compel a single deposition of Committee counsel. Gordons's Emergency Motion To Continue, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 475. Grossman also filed a supplemental affidavit of the Gordons. The court scheduled a telephonic status conference for March 20, 2009. Following that conference, the court entered an order denying the motion to continue and, perhaps based on the New Claim Motion, reconsidered its position and indicated it would hold an evidentiary hearing on the Motion to Vacate on March 31, 2009. The court indicated it would hear evidence on the adequacy of the notice the Gordons received concerning the October 7, 2008 hearing, the receipt of such notice and any unresolved discovery issues.

However, prior to the March 31, 2009 hearing, the parties entered into an agreed order resolving the Motion to Vacate. The Motion to Vacate was granted and the order disallowing the Gordon Claim was vacated. The scheduled deposition of Marc Merklin, counsel for the Committee, was cancelled. Instead, the Liquidation Trustee and Grossman participated in a court phone conference on March 31st. The parties agreed on a response time to the New Claim Motion and the court set a further status conference for May 12, 2009. The Liquidating Trustee filed a brief in opposition to New Claim Motion. On April 13, 2009, the day the reply brief was due, Grossman sought one additional day – that is, by April 14, 2009 – to file a reply brief. While that motion was pending, Grossman filed a reply brief on behalf of the movant on April 15, 2009 and an amended reply on April 16, 2009. On April 20, 2009, an agreed order was entered allowing Grossman until April 14, 2009 to file a reply brief.

The Liquidation Trustee moved to strike the reply brief as late and also indicated it violated the 20 page reply brief limit by using all 20 pages and adding additional arguments in a 9 page declaration of Gertrude Gordon and an 8 page declaration of Grossman. Alternatively, the Liquidation Trustee sought oral argument or leave to file a sur-reply. Grossman filed a response on May 1, 2009 in which he indicated the delay was caused by computer problems and there was no prejudice to anyone by the two-day delay. A hearing was scheduled for May 12, 2009.

As a result of the May 12, 2009 hearing, the court entered an order that denied the Amended Claim Motion and the New Claim Motion. However, the bankruptcy court made it plain that Grossman could pursue any and all theories of recovery based upon the original proof

of claim. The court also granted the Trustee's motion to strike the reply brief. In addition, the court overruled Gordon's objection to the final fee application of Committee counsel and an application to employ financial advisors to the Trustee nunc pro tunc.[3] Grossman appealed the decision denying leave for the New Claim Motion and also the order to strike the reply brief as to that motion. Grossman elected the district court for these appeals (the "New Claim Appeal").

In addition, the May 18, 2009 order scheduled an evidentiary hearing concerning the Gordon Claim for June 30, 2009 and, among other things, required both parties to file proposed findings of fact and conclusions of law not later than June 29th.

Prior to the merit hearing on the Gordon Claim, on June 25, 2009, the Trustee filed a motion in limine to exclude the testimony of an expert on Jewish religious law.[4] The apparent purpose of this expert witness was to opine that Orthodox Jews may not lend money to other Jews and charge interest on such loans. This evidence was intended to relate to the issue whether the use of the term "investment" in the Agreement signified a loan or a capital contribution. The Trustee was willing to stipulate that Orthodox Jews may not charge interest for these loans, but Grossman sought stipulations beyond what the Trustee would accept. Grossman argued that the witness was relevant because the proposed stipulation was inadequate to explain that the use of the word "investment" is a code word for "loan" among Orthodox Jews. According to the Trustee, despite earlier extended communications, Grossman did not disclose an expert on this topic until a June 22nd e-mail. The bankruptcy court ultimately denied the motion because the parties stipulated during the hearing that the Agreement was clear and unambiguous. After further filings by Grossman, the court also denied a motion for a rehearing.

Both parties filed stipulations and proposed findings prior to the Gordon Claim hearing. The hearing was held on June 30, 2009. Following the hearing, Grossman renewed in writing an oral request to file a post-hearing memorandum to explain the legal theories for the Gordon Claim and provide appropriate legal authority. Grossman noted the lack of formal pleadings,

---

[3] Grossman objected to the portion of the fee application related to the Gordon Claim litigation, arguing the fees must be judged at the conclusion of the litigation. The objection went through a litany of concerns as to how Brouse addressed various filings pertaining to the Gordon Claim. Through the objection, Grossman, in essence, took another opportunity to argue issues related to the New Claim Motion and the Amended Claim Motion.

[4] This issue had been previewed at length during the May 12, 2009 hearing.

pre-trial order, requirement to provide citations in the scheduling order, and lack of a local rule or standing practice of the bankruptcy court. In his response, the Liquidation Trustee noted that the bankruptcy court had made clear both in its November 26, 2008 scheduling order and in open court on December 6, 2008 that all such legal authority should be included in the proposed findings and conclusions. Additionally, the Liquidation Trustee opined that citations of authority are inherent in any proposed conclusions of law. The court, in its decision, concluded that post-trial briefing "would not be useful to the Court in reaching a decision. The request is denied." Memorandum Opinion RE: Objection To Claim at 3 n.4, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 587 (the "Merit Opinion").

II.     Merit Opinion of the Bankruptcy Court Disallowing the Gordon Claim

The Trustee's objection was sustained in the Merit Opinion. The following is a summary of the bankruptcy court's findings of fact and conclusions of law concerning the Gordon Claim:

Darlington operated a nursing home. The nursing home was located on real property owned by Dani. The majority owners of Dani, Darlington and the other related entities were Schwartz.

The Gordons or Gertrude Gordon loaned Schwartz funds through five different promissory notes from May 1994 through October 1995 for a total of $1,550,000. These notes were replaced with a single promissory note in January 2010. The Gordons agree these are personal obligations of Schwartz.

In July 2010, Gertrude Gordon sent two signed checks with the amount left blank to Schwartz. The checks were from an account in the names of the Gordons. Pursuant to instructions of Sally Schwartz, an employee of the nursing home wrote $500,000 on each check, Sally Schwartz on the payee line and "for Dani Family" on the memo lines. On July 27, 2010, these two checks were deposited into a "personal business account" of Schwartz at Bank One. The bankruptcy court found that the memo designation meant these funds were to be transferred to Dani. The $1,000,000 transaction was memorialized in the Agreement dated July 27, 2000 and notarized on August 24, 2000. The complete Agreement was admitted as a trial exhibit.

As with the prior promissory notes, the Agreement was signed by Schwartz in their individual capacities. A promissory note was not prepared, although it was referenced in the

Agreement. The Gordons received a Schedule K-1, consistent with the treatment of the $1,000,000 as a capital contribution. The Gordons never received any funds due under the Agreement and prior to the filing of the proof of claim had never instituted any litigation concerning the Agreement. David Gordon testified that he understood from his mother that the Agreement was a loan with an "equity kicker" in Dani and Darlington. Merit Op. at 7.

In June 2007, prior counsel for Royal Manor, Dani, Darlington and other related corporate entities sought the Gordons' consent for a proposed sale of Darlington and Dani to Orion Care Services, LLC. The Gordons were not represented by counsel. Gertrude Gordon negotiated for the Gordons. Eventually the Gordons agreed to an understanding of the Agreement that the $1,000,000 initial investment would be paid after "mortgagees, secured creditors, trade creditors and related costs." Merit Op. at 8.

In the end, the bankruptcy court determined that "[t]he Gordons presented no credible evidence in support of their argument" that the debt was an obligation of Darlington. Merit Op. at 10.[5] From the Agreement, "it appears clear that the obligation held by the Gordons was to be satisfied by Schwartz individually" and included an agreement by Schwartz to provide an equity position in "the Darlington Nursing Home." Merit Op. at 10. Gertrude Gordon expected the Gordons to be paid by Schwartz. The bankruptcy court also found that the term "investment" was not relevant in determining who was the obligor of the Agreement.

The decision further found that, under Ohio law, an individual's failure to disclose an agency relationship renders that individual personally liable for agreements executed with third parties.

This portion of the decision concluded that, regardless of whether the Gordons had an equity interest in Dani or Darlington, Schwartz and not Darlington are the obligors under the Agreement.

Next, the decision addressed the Gordons' alternative argument that the transaction was intended to be a loan to Darlington, rather than providing for an equity investment in the

---

[5] The parties stipulated during the hearing that the Agreement was unambiguous and, therefore, parol evidence would not be considered concerning the meaning of the Agreement. As to the merits of the Gordon Claim, the evidence outside the Agreement is only relevant to Grossman's alternative theories of recovery.

Debtors. The decision reviewed the eleven factor test to re-characterize a debt claim as equity from *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*:

> The factors are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. No one factor is controlling or decisive. The factors must be considered within the particular circumstances of each case. We note that "[t]he more [a transaction] appears to reflect the characteristics of ... an arm's length negotiation, the more likely such a transaction is to be treated as debt."

269 F.3d 726, 749-50 (6th Cir. 2001) (citations omitted).

The Merit Opinion found that no evidence was presented as to "the existence of a sinking fund, the extent to which the advances were used to acquire capital assets, the corporation's ability to obtain financing from outside sources, or the adequacy/inadequacy of the purported limited partnerships'/obligors' capitalization." Merit Op. at 12. Thus, factors 5, 8, 10 & 11 were not considered.

The court reviewed the other 7 factors. Concerning the first factor, the court found that there was no promissory note evidencing the indebtedness which *Autostyle Plastics* found was a "strong indication" of a capital contribution. In addition, the Gordons, Dani and Darlington treated the transaction as a capital contribution for tax purposes.

The court found factors two and three suggested a loan because of the fixed interest and date for the return of funds. However, the court noted the funds re-payment was contingent on the success of the business and therefore found factor four suggested a capital contribution. Regarding the sixth factor, the ratio of contributions by equity holders to the Debtors was asymmetrical which suggested "slightly" a loan. Specifically, under the operating agreements, Schwartz held an 80 % equity position for $0 contribution; the Gordons held a 5 % equity interest for a $500,000 contribution and a third party, 1176913 Ontario Inc., held a 10 % interest for a $1 million contribution. Concerning the seventh factor, while acknowledging that a

security interest often is indicative of a loan, the collateral of "PS Realty" did not belong to Dani or Darlington. Therefore, the collateral did not support the theory of a loan to Dani or Darlington. Finally, the ninth factor, subordination to "outside creditors", supported the theory that the transaction was a capital contribution.

Finally, the Gordons argued that pursuant to section 4.7 of the Operating Agreement the Gordons' equity interest converted to unsecured debt. The court noted that no evidence was presented as to this point and the Gordons had alternatively argued that the court should "reject" the operating agreements because they include the forged signatures of the Gordons.

The Merit Opinion found that the Gordons had unnecessarily attempted to delay the final determination of the Gordon Claim:

> The Gordons, in a manner consistent with their efforts to draw this process out, have taken an appeal from the Court's order denying Gordons' motions for leave [to file a new claim] and requiring the Gordons' [sic] to proceed based on the Claim as filed, but allowing them the leeway to assert, at the evidentiary hearing, various theories in support of their Claim.

Merit Op. at 2, n.2.

The conclusion of the Merit Opinion stated that:

> The Committee followed by the Liquidation Trustee were forced to expend a great deal of estate resources in prosecuting the Objection to the Claim of David and Allison Gordon, the nephew and niece of the pre-petition owners of Royal Manor and the Related Entities, perhaps as the result of unjustified, unsupported, or vexatious positions taken by Mr. Grossman in support of the Gordons' claim. Although no request for sanctions pursuant to Fed. R. Bankr. P. 9011 has been made to date, the Liquidating Trustee shall have twenty days from the entry of this memorandum opinion to file a motion seeking sanctions against Mr. Grossman, and if appropriate, against Gertrude Gordon or the Gordons pursuant to Fed. R. Bankr. P. 9011.

Merit Op. at 14 – 15.

Grossman appealed the Merit Opinion and elected to pursue the appeal with the district court.

III.    Appellate Decisions Concerning the Disallowance of the Gordon Claim[6]

The New Claim Appeal was ruled upon by District Court Judge Patricia A. Gaughan. Mem. of Op. and Order, Gordon v. Wehrle, No. 5:09-cv-1506, ECF No. 26.  The opinion affirmed the bankruptcy court's denial of the New Claim Motion.  Judge Gaughan rejected Grossman's argument that the bankruptcy court summarily denied the New Claim Motion without explanation.  The decision stated that "[u]pon review, the Court finds that appellants are blatantly mischaracterizing the record." *Id.* at 8.  Grossman failed to reference the bankruptcy court's explanation at the May 12, 2009 hearing that the Gordons could raise any theory of recovery, but there was no legal basis for a separate proof of claim.  Judge Gaughan found Grossman's decision to appeal inexplicable, given that the Gordons had won the right to present alternative theories.  She also affirmed the previously discussed decision to strike Grossman's reply brief.  Grossman appealed these decisions to the Sixth Circuit Court of Appeals.

The Liquidation Trustee moved the District Court for sanctions against Grossman pursuant to Federal Rule of Bankruptcy Procedure 8020, 28 U.S.C. § 1927 and the inherent authority of the district court.  The Liquidation Trustee also sought to deny Grossman pro hac vice admission.

The Liquidation Trustee argued that 1) Grossman's pursuit of his first appeal of the decision denying the New Claim Motion violated the Ohio Rules of Professional Conduct; 2) Grossman further violated those rules by "attack[ing] the integrity of the Bankruptcy Court and the integrity of all judges in the Northern District . . ." and 3) "Grossman has placed his honesty and integrity at issue by filing briefs containing statements that misrepresent court proceedings."  Mem. of Op. and Order at 4, Gordon v. Wehrle, Nos. 5:09 CV 2687 and 5:09 CV 1506, ECF No. 32.  Judge Gaughan agreed with the Liquidation Trustee.  The decision found that Grossman lacked good faith in misstating the court record by asserting the bankruptcy court

---

[6] The appellate process concerning the bankruptcy court sanctions (the First Appeal) and post-judgment collection of the sanctions judgment (the Second Appeal) is addressed in separate sections.  The district court sanction determination discussed in this section is part of what occurred during the appeal of the disallowance of the Gordon Claim.  Although they provide important background, these sanctions are not part of the present appeals.

denied the New Claim Motion in a summary manner, with a decision consisting only of the word "denied" and was "without justification or explanation." *Id.* at 8. The transcript from the May 12, 2009 hearing showed that the bankruptcy court gave ample explanation for the decision. Even after the Liquidation Trustee raised the transcript in its appellee brief, Grossman did not alter his position. Judge Gaughan found that Grossman's "factual misstatements" were in violation of Ohio Rule of Professional Conduct 3.3(a)(1).[7] Further, Judge Gaughan found that "Grossman's disrespectful treatment of the Bankruptcy Court in this case also violates Ohio Rules of Professional Conduct Section 5[8] and Rule 3.5(a)(6)[9]." *Id.* at 9 (footnotes omitted).[10]

---

[7] Ohio Rule of Professional Conduct 3.3(a)(1) states that "[a] lawyer shall not *knowingly* do any of the following: . . . make a false statement of fact or law to a *tribunal* or fail to correct a false statement of material fact or law previously made to the *tribunal* by the lawyer[.]"

[8] Judge Gaughan quotes the Preamble of § 5:

> Lawyers play a vital role in the preservation of society. A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjustified criticism. Although a lawyer, as a citizen, has a right to criticize such officials, the lawyer should do so with restraint and avoid intemperate statements that tend to lessen public confidence in the legal system. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

[9] Ohio Rule of Professional Conduct 3.5(a)(6) states that "[a] lawyer shall not do any of the following . . . engage in undignified or discourteous conduct that is degrading to a *tribunal*."

[10] The decision found:

> Grossman, in his motion to disqualify, has accused the Bankruptcy Court of the following: having a vested interest in ruling against the Gordons to validate a "hasty and improper approval of a deceptive disclosure statement filed by [the Bankruptcy Court's] appointee attorney"; approving a "deceptive disclosure statement without checking its figures and without giving interested parties adequate time to check its erroneous figures"; having "an interest in disparaging the Gordons, their claim and their counsel as much as possible"; "wrongfully prejudg[ing] the credibility and character of the Gordons and their counsel"; "wrongfully prejudg[ing] the alleged character and professionalism of trustee's

Grossman claimed that all these statements were to address the standard for judicial disqualification, which depends upon the appearance of partiality to a reasonable observer. *See* 28 USC § 455. However, Judge Gaughan found that "these accusations are intemperate and degrading– Grossman is essentially accusing the Bankruptcy Court of maintaining a vendetta against him and his clients for the purpose of covering up wrongdoing by the trustee's attorney." Mem. of Op. and Order at 11, Gordon v. Wehrle, Nos. 5:09 CV 2687 and 5:09 CV 1506, ECF No. 32. Judge Gaughan found the statements did not concern what a reasonable person could observe, but attribute an improper motive to the bankruptcy court. Grossman also asserted that because the Bankruptcy Judge "is the Chief Judge in this District", a Judge outside the District with whom neither counsel has ever appeared should hear the motion for disqualification. *Id.* at 11, n.6. Judge Gaughan found that this suggestion was completely unsupported.

However, with the exception of revoking his pro hac vice privileges, Judge Gaughan denied the motion for sanctions for that specific action and left the issue of further sanctions for the bankruptcy court to determine:

> Upon review, the Court finds that monetary sanctions are unwarranted. While the Gordons' first appeal is an example of overzealous advocacy given that the Bankruptcy Court indicated it would hear new-claim theories at the evidentiary hearing on the original claim, the Court finds that it does not rise to the level of being truly frivolous. Because the order from which the Gordons appealed became final during the pendency of the appeal, the appeal was properly before this Court. Additionally, appellee's statement that "this Court determined that the Agreement was a personal obligation of the Schwartz's, and not an obligation of Dani/Darlington" is simply incorrect. Appellee is referring to the Court's factual findings as to who signed the agreement at issue. The Court made no findings with respect to obligations arising out of the agreement, as the Bankruptcy Court had not yet ruled on allowing the Gordon's original claim. That issue was thus not before the Court on the first appeal. *Moreover, any instances of misconduct for which the Bankruptcy Court warned Grossman about the possibility of sanctions are properly dealt with by the Bankruptcy Court's resolution of the motion for sanctions against Grossman pending before it.*

---

attorney Marc Merklin (whom Her Honor appointed) where attorney Merklin's unclean hands is a material issue"; and having a local bias.

Mem. of Op. and Order at 9-10, Gordon v. Wehrle, Nos. 5:09 CV 2687 and 5:09 CV 1506 (N.D. Ohio Dec. 17, 2009), ECF No. 32.

> The Court agrees with appellee that Grossman's misstatements of the Bankruptcy Court's record in the Gordons' briefs are serious, however, the Court's denial of Grossman's motion for admission *pro hac vice* is a sufficient sanction for that misconduct. Accordingly, appellee's motion for sanctions is denied.

*Id.* at 12-13 (italics added).

Judge Gaughan subsequently denied Grossman's motion for rehearing and/or reconsideration of its decision denying him admission pro hac vice.

In September 2010, Judge Gaughan issued her decision in the consolidated appeals of the decision sustaining the Liquidation Trustee's objection to the Gordon Claim. *Gordon v. Wehrle*, 2010 WL 3835223 (N.D. Ohio Sept. 29, 2010).[11] The District Court found the document was a "personal obligation of Schwartz." *Id.* at *8. Concerning the question of whether the $1 million advance was a loan or an equity investment, the district court considered the previously discussed 11 factor test in *Autostyle Plastics* and determined the Gordons had an equity interest rather than a loan in Darlington. Grossman appealed to the Sixth Circuit Court of Appeals.

On May 8, 2012, the Sixth Circuit affirmed the consolidated appeals, concluding that the loan from Gertrude Gordon to Schwartz was in the Schwartz's individual capacity and not their corporate capacity with Dani or Darlington. *Gordon v. Official Committee of Unsecured Creditors (In re Royal Manor Mgmt., Inc.)*, 480 F. App'x 362 (6th Cir. 2012). Further, the Sixth Circuit ruled that the bankruptcy court properly denied the New Claim Motion. It noted that nothing in the bankruptcy court's ruling prevented the Gordons from pursuing any theory for the claim at the hearing on the original claim, asking rhetorically: "What is the source of the confusion?" *Id.* at 365. The Sixth Circuit also denied a petition for rehearing en banc.[12]

On November 26, 2012, the Supreme Court, without comment, denied the Gordons' petition for certiorari. *Gordon v. Wehrle*, 133 S. Ct. 653 (2012).

---

[11] The decision also rejected Grossman's attempt to revisit issues related to the denial of the New Claim Motion, which Judge Gaughan addressed in her prior decision.

[12] The Sixth Circuit stayed the mandate to allow Grossman to file a writ of certiorari to the Supreme Court. Grossman argues that the decision of the Sixth Circuit to stay the mandate shows his arguments were not frivolous. Without knowing the reasoning behind that order, the order cannot be considered as evidence of his arguments being meritorious.

IV.     Sanctions Related to the Gordon Claim Litigation

On October 21, 2009, the Trustee filed a motion for sanctions pursuant to Bankruptcy Rule 9011 against Gertrude Gordon, the Gordons, David Mucklow, local counsel for the Gordons,[13] and Grossman. In his response, Grossman argued, among other things, that the sanctions motion failed to comply with the "safe harbor" provision of Rule 9011.

Also on November 2, 2009, Grossman filed an emergency motion on behalf of himself and Gertrude Gordon for a one day extension. On November 4th, Grossman pro se filed his opposition to sanctions. The Trustee filed a reply on November 9th. That document also included a "supplemental motion" seeking sanctions under an alternative basis – that being the court's inherent authority provided by 11 U.S.C. § 105.

On November 11, 2009, Grossman, in the first of several attempts, filed a motion seeking the Bankruptcy Judge's recusal pursuant to 28 U.S.C. § 455(a). The motion listed various arguments including that "a reasonable observer would view [the Bankruptcy Judge] as having a vested interest in ruling against the GORDONS and their counsel in the sanctions proceeding, in order to validate Her Honor's previously hasty and improper approval of a deceptive disclosure statement filed by her appointee attorney MARC MERKLIN."[14] Mot. to Disqualify Judge Shea-Stonum in Sanctions Proceeding at 3, In re Royal Manor Mgmt., Inc., 08-50421, ECF No. 611. Grossman stated the Bankruptcy Judge had an "improper local bias." *Id.* at 4. He claimed he discovered the "deceptive disclosure statement" after the June 30, 2009 hearing on the merits of the Gordon Claim. That motion was denied on March 10, 2010.

On January 29, 2010, the bankruptcy court issued an order directing Grossman to show cause why she should not adopt the statement of facts in the Liquidation Trustee's sanctions motion and why Grossman should not be sanctioned pursuant to 28 U.S.C. § 1927. The order

---

[13] On November 3, 2009, Mucklow moved to withdraw from the case. That motion was granted without objection. Grossman has acknowledged, for purposes of sanctions, that he drafted all the relevant documents and is responsible for them.

[14] The asserted deceptiveness was that the Gordon Claim was not included in the description or quantification of the unsecured claims in the amended disclosure statement filed in September 2008 instead describing $58,247 in filed unsecured claims. At that particular period of time, the Gordon Claim had not yet been disallowed. Based upon that omission, Grossman accused the Committee counsel of filing a fraudulent disclosure statement.

further provided that the court would not consider responses after February 12, 2010. On February 12th, Grossman filed an "emergency motion" seeking an extension until Tuesday, February 16th. Grossman filed his response (in its then current state) on February 12th. The Liquidation Trustee filed a response to the show cause order on February 19th. Grossman filed an additional response to that filing on March 1st.

On March 12, 2010, the Gordons filed a "partial opposition" to paying Liquidation Trustee and Trustee counsel expenses related to the Gordon Claim issues. Grossman argued that those fees and expenses should be paid by a creditor, the Hochman Trust, rather than the Liquidation Trust. Grossman reasoned that the Trustee had filed many claim objections mostly against other unsecured creditors. He further reasoned if those claim objections were successful, the unsecured creditors would be paid in full and, under the confirmed plan, the Hochman Trust would be paid its claim, which was in excess of $5,000,000. He concluded that therefore the Hochman Trust should pay the Trustee's expenses related to the Gordon Claim. Grossman cited no legal authority for this theory. Both the Trustee and the Hochman Trust responded to the objection, noting, among other things, Grossman's proposal was inconsistent with the Chapter 11 plan. Following a hearing for which Grossman appeared telephonically, the court entered an order approving the fees and expenses. The bankruptcy court stated:

> The only asserted basis for objecting to the Applications is that "all Gordon-related fees and expenses incurred by the trustee and by trustee's counsel should be paid only by the Hochman Trust, not by the estate (i.e., not by the unsecured creditors), because the Hochman Trust now appears to be the sole beneficiary of Gordon-related litigation by the trustee and trustee's counsel." The Response cites no legal authority, and at the hearing on this matter, Mr. Grossman admitted that he had no legal authority in support of the position he champions.

> During the hearing Mr. Grossman based his argument that the Hochman Trust should bear the expense of prosecuting the objection to the Gordons' claim on what he alleged were the Committee's counsel's prior representation that there would be a 100% distribution to creditors. Because Mr. Grossman could not cite with specificity the location of the representation he was relying upon, the Court directed Mr. Grossman to file with the Court a document citing to specific references in the record of this Court or any other court where counsel for the liquidating trustee made such representations. The Court further directed that if there is no such representation, Mr. Grossman was to note that there was no such unequivocal representation and file a document to that effect.

Consistent with his historical practice in this case of distorting the record, Mr. Grossman's subsequent filing, rather than being a 1 page pleading indicating that there were no unequivocal representations made in this case that there would be a 100% distribution to the holders of unsecured claims in this case, points to language in the first and second amended disclosure statements in this case that holders of allowed general unsecured claims "shall receive in full and final satisfaction of such Claim an **estimated** 100% of its Allowed Claim" and attempts to weave a new story that the basis of the Gordons' Response were the "estimations of 100% payments" to holders of unsecured claims.

Despite Mr. Grossman's unsupported assertion that it is not, the relief requested by the Gordons is inconsistent with the provisions of the plan confirmed in this case. Under the confirmed plan, the Liquidation Trustee has an obligation to oppose the claims of creditors which have no merit and/or are frivolous. **The confirmed plan, and the liquidation trust created thereunder, authorize the Liquidation Trustee to employ the services of attorneys and other professionals for this purpose and to pay the fees for those services out of the trust.** Therefore, the fees and expenses related to the prosecution of objections to claims, including the objection to the Gordons' claim, are rightfully paid by the Liquidation Trustee out of the Liquidation Trust. There is no basis for shifting the responsibility of paying for fees and expenses associated with the prosecution of objections to claims to the Hochman Trust, the holder of an allowed claim, which was subordinated to general unsecured claims by agreement as part of the confirmed plan.

The provisions of a confirmed plan are binding on all claimants, including the Gordons. 11 U.S.C. § 1141(a). The Response has no basis in law, either case law or statute, ignores the controlling effect of a confirmed plan and is based on an incorrect factual premise. Therefore, the Response is overruled.

　　* * *

. . . Although it is not essential that the Court note such a reservation to a later hearing, the Court reserves the right to address the behavior of attorney Grossman with respect to these Applications to the time when the Court will consider the application of 28 U.S.C. § 1927. In addition, Mr. Grossman will henceforth be required to appear in person at any hearing at which he intends to be heard by the Court.

Order Granting Second Interim Application for Comp. and Reimbursement of Expenses for Brouse McDowell, LPA [#645], Granting Second Interim Application for Comp. and Reimbursement of Expenses for David Wehrle [#645] and Overruling Objection of David and Alison Gordon to Those Applications [#691] at 2 – 4, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 776.

Grossman filed a motion to correct, amend or reconsider the order denying his motion concerning the Hochman Trust's payment of the Trustee's expenses. The court denied the motion, noting the issues raised by Grossman did not address the legal principle that the Liquidation Trust was required to pay the Trustee's expenses, including his counsel fees.

Also in March 2010, Grossman filed a motion to amend or for reconsideration of the order denying the earlier motion for recusal of the Bankruptcy Judge. In this filing, he stated that the order denying the motion for disqualification erroneously found that Grossman stated that the bankruptcy court knowingly approved a fraudulent disclosure statement in his recusal motion. However, Grossman asserted that he only stated that the court "failed to check" the disclosure statement. Mot. for Amendment and/or Recons. of Order Denying Mot. to Disqualify Judge Shea-Stonum in Sanctions Proceeding at 1, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 698. The bankruptcy court denied the motion for failure to articulate a basis under Federal Rules of Bankruptcy Procedure 9023 or 9024 (incorporating Federal Rules of Civil Procedure 59 and 60) for the relief sought. Order Denying Motion To Amend or Reconsider Order Denying Motion To Disqualify, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 783.

On October 19, 2010, the court held a status hearing regarding Grossman's motion to adjourn the pending sanctions motion while he pursued his appeals. The sanctions proceedings were adjourned until the appeals were completed.

From October 2010 until July 2012, while the various appeals were pursued up to and through the Sixth Circuit Court of Appeals, the bankruptcy court had a respite from any filings related to the Gordon Claim or sanctions against Grossman. Following the Sixth Circuit's denial of Grossman's motion for en banc rehearing on June 20, 2012, the Trustee filed a motion to extend the date for any motion for supplemental sanctions. An extension was granted until 14 days after the expiration of the stay of the Sixth Circuit mandate or a final ruling by the Supreme Court.

On November 26, 2012, the Supreme Court denied Grossman's for writ of certiorari. On December 11th, the Liquidation Trustee filed a renewed motion for sanctions against Grossman and Gertrude Gordon pursuant to the bankruptcy court's inherent power under 11 U.S.C. § 105 and separately under 28 U.S.C. § 1927.

The renewed sanctions motion alleges Gertrude Gordon and Grossman took positions that "were unjustified, unsupported, and vexatiously intended to multiply these proceedings." The Liquidation Trustee's Renewed Motion for Sanctions Pursuant to this Court's Inherent Power Under 11 U.S.C. § 105(a), and Under 28 U.S.C. § 1927 at 1, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 953. The motion states that "there was no credible evidence or legal basis to support the claim that the Gordons were general unsecured creditors of Dani, Darlington or any other debtor entity. Despite this fact, Gertrude Gordon and Attorney Grossman continued to file frivolous pleadings to vexatiously multiply these proceedings." *Id.* at 8.

The first sanctions hearing occurred on January 15, 2013.

On the morning of the sanctions hearing, Grossman filed another emergency motion, in this instance to withdraw the reference of the proceeding to the bankruptcy court pursuant to the general order of the district court. This motion was later denied by the district court.[15] The primary reason for the motion was Grossman's assertion that the Bankruptcy Judge made statements during a January 8, 2013 phone conference that demonstrated that she had already decided the issue. This assertion was in part based on the following statement by the Bankruptcy Judge: "[R]ecounting the procedural twists and turns that largely I would say were driven by Mr. Grossman, [the Gordon claim objection] drug on for some time." *See* Tr. of Jan. 8, 2013 Hr'g at 4, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 963.

Also on January 15, 2013, the Liquidation Trustee filed a motion to compromise the sanctions motion as it pertained to Gertrude Gordon. The agreement called for Gertrude Gordon to pay the Liquidation Trust $50,000 and provided for a mutual release, excepting any claims against Grossman. Grossman filed a response, indicating that he had no objection to the settlement if it did not prejudice him.[16] Specifically, Grossman was concerned that the language

---

[15] Grossman also made an oral motion to disqualify the Bankruptcy Judge at the sanctions hearing on January 15, 2013, which was denied. He asserted, without any authority, that the filing of his motion to withdraw the reference divested the bankruptcy court of jurisdiction. He alternatively asked the Bankruptcy Judge to continue the hearing until after the district court decided the motion to withdraw the reference.

[16] Grossman argued that the reference to a singular "motion" by the Trustee was being used to thwart Grossman's argument that the sanctions process was being abused by the Trustee

used in the proposed order was prejudicial to him.  In reply, the Liquidation Trustee asserted that Grossman lacked standing and the response was without merit, but the Trustee was open to amending the proposed order to avoid further litigation.  A hearing was set for February 12, 2013.  Less than two hours before that hearing, Grossman filed a further response to the latest iteration of the proposed order.

The hearing was also used as an impromptu status conference concerning settling the sanctions issues relating to Grossman, at which the Bankruptcy Judge asked the parties whether they had an interest in discussing settlement. The following exchange occurred:

> THE COURT: I am now going to switch gears and make this a Section 105 status conference.  And the resolution with Mrs. Gordon and her two adult children should be in the rearview mirror now, approved.  I need to enter the order but it's approved.
>
> I have under advisement the matter of sanctions against Mr. Grossman based upon the January 15 hearing.  Has there – Mr. Wehrle, have you any interest, since the three of you are all in Akron today, in discussing with Mr. Grossman a resolution of – a resolution of all matters that you might have?  And I'm asking you – I mean I know – I know that you've got counsel.  And I'll take a recess and let you confer with your counsel.
>
> This is a bad version of Zeno's [sic] paradox at this point.  *And, Mr. Grossman, I would just ask you right now whether you would have any interest in talking about a – just conferring with Mr. Wehrle and his counsel about a resolution of these matters that would require a substantial contribution from you but might be less than what the Court would order based upon the January 15 hearing*?
>
> MR. GROSSMAN: Your Honor, I don't know that it's proper for your Honor to probe my willingness or not willingness to contribute money, as your Honor uses the phrase, in a settlement –
>
> THE COURT:  Sir, I asked you a yes or no question.
>
> MR. GROSSMAN: Under objection, I think Your Honor's question is improper, but I will respond to it because Your Honor is the authority here, you're the boss,

---

through six (6) separate sanctions motions.  (The motion actually defines "Sanctions Motion" to include multiple filings).  Grossman argued that the language in the order stating it did not constitute a release of "all claims, liabilities and causes of action in relation to the Gordons' claim" potentially exposed him to further sanctions liability.

and I'll comply with Your Honor's order. My position is, Judge, that I have done nothing sanctionable.

THE COURT: Okay. So your answer is no.

MR. GROSSMAN: Under objection, my answer is no. I've done nothing sanctionable, Judge. I've lost. I've congratulated Ms. Mazur –

The COURT: Sir, thank you very much. Thank you. Please have a seat. There's no reason for you, Ms. Mazur, to confer with Mr. Wehrle. The Court has done what it could today. Thank you.

(END OF PROCEEDINGS)

Tr. of Feb. 12, 2013 Hr'g at 11 - 13, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 993 (italics added).

The court entered an order approving the compromise with the Gordons. The only reference to Grossman was in paragraph 3(b): "The Trustee and the Gordons shall mutually release each other and all professionals retained by either the Trustee or the Gordons, *with the exception of Attorney Dennis Grossman*, from all claims, liabilities, and causes of action in relation to the Gordons' Claim (and any appeals therefrom) and the sanctions issues in this Court." Order Granting Motion of the Liquidation Trustee to Approve Compromise at 3, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 988.

Grossman's concern about the Gertrude Gordon settlement continued. On February 27, 2013, Grossman filed a two-part motion. First, he asserted he is entitled to a $49,313.50 credit based upon the settlement with Gertrude Gordon. Second, Grossman sought a separate order confirming the settlement order did not deprive him of this credit.

On March 15, 2013, Grossman moved again for the Bankruptcy Judge to recuse herself. The basis for the motion was threefold. First, Grossman asserted the Bankruptcy Judge improperly entered the settlement process, repeatedly was hostile to Grossman in her statements, including raising sanctions sua sponte on three occasions, commented inappropriately concerning the appeals of the disallowance of the Gordon claim and ignored her own actions in causing delay.

24

On March 28, 2013, the court issued its first sanctions opinion. Op. re: Liquidation Trustee's Mot. for Sanctions Pursuant to 28 U.S.C. § 1927, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 999 (the "Sanctions Opinion"). The decision addressed whether Grossman should be sanctioned under 11 U.S.C. § 105 as well as 28 U.S.C. § 1927. The bankruptcy court noted that, due to funds reserved for the disputed Gordon Claim, a full distribution by the Liquidation Trustee could not occur. Further, the distribution to allowed claims was diminished by the Liquidation Trustee having to spend attorney fees defending three appeals Grossman filed on behalf of the Gordons.

The decision includes an appendix summarizing "Documents RE: Gordon's and Attorney Grossman pleadings with arguments." Sanctions Op. at 13 – 37. This appendix contains screen shots of ECF docketing along with a separately prepared summary of Grossman's positions related to those filings. There is also a one page Appendix B listing 16 separate arguments of Grossman concerning the Gordon Claim, the sanctions issues and documents related to those issues. Overall, this decision makes clear two fundamental points: 1) the theories that the Gordons had an unsecured claim lacked merit and 2) those theories and several collateral issues were pursued vexatiously. The charts were intended to show the "repetitive and vexatious nature of the filings." Sanctions Op. at 6.

At the conclusion of the Sanctions Opinion, the bankruptcy court awarded $150,000 in sanctions, concluding that "[t]he fees incurred by the Liquidation Trustee at the bankruptcy court level were proportionate to controversies that Grossman chose to frame."[17] Sanctions Op. at 12. The court gave the Liquidation Trustee five work days from the entry of the opinion to notify the court if he was seeking additional sanctions for fees incurred as a result of the hearing and additional filings after the hearing. Finally, the latest recusal motion was denied.

Grossman appealed the Sanctions Opinion. However, due to the sanctions issues not being fully resolved, this Panel dismissed the appeal as not being from a final, appealable order.

---

[17] $150,000 was based on fees of about $149,000 related to work on the Gordon Claim described in the sanctions motion and then the Bankruptcy Judge rounded the figure to $150,000 based on additional filings and work performed by Trustee counsel. The supplemental sanctions ultimately included all itemized fees of the Committee and Trustee for work related to the Gordon Claim, not including fees for work performed at the appellate level.

On April 2, 2013, the Liquidation Trustee filed a notice reflecting that since November 30, 2012, he had incurred $61,972.50 concerning the sanctions and related issues. The bankruptcy court scheduled a hearing for June 11, 2013, but it was rescheduled twice and ultimately occurred on August 27, 2013.

On June 6, 2013, Grossman filed his "testimony" in opposition to the trustee's request for sanctions. On July 5th, the Liquidation Trustee and Grossman filed proposed findings of fact and conclusions of law. On July 22nd, Grossman filed a motion to strike certain portions of the Trustee's proposed findings and conclusions.

On August 26, 2013, the day prior to the supplemental sanctions hearing, Grossman filed an "emergency supplemental motion" seeking the Bankruptcy Judge's recusal again.

The supplemental sanctions hearing occurred on August 27, 2013. The witnesses at the hearing were the Trustee, Trustee counsel Louise Mazur and Grossman.

The court entered its decision on December 2, 2013. Supp. to Op. re: Sanctions Against Dennis Grossman, Esq., In Re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 1057 (the "Supplemental Sanctions Opinion"). It also entered a final judgment on December 3, 2013. The bases for the sanctions were the court's inherent authority, 11 U.S.C. § 105 and 28 U.S.C. § 1927. The decision added an additional $57,004 in sanctions which covered attorney fees of the Trustee after the time covered by the original sanctions hearing, which was through November 30, 2012. The bankruptcy court stated:

> In the renewed sanctions motion, the Liquidation Trustee sought sanctions pursuant to the Court's inherent power, 11 U.S.C. § 105 and 28 U.S.C. § 1927. On January 15, 2013, this Court conducted an evidentiary hearing with respect to the request for sanctions against Grossman, including a request that Grossman be required to pay into the estate an amount of money equal to the attorneys' fees incurred by the Liquidation Trustee in responding to Grossman's ceaseless and ultimately baseless efforts to have a claim recognized in this chapter 11 case. I found the requested relief appropriate in this instance and determined that such an award would serve the dual purpose of (1) deterring future disregard of the minimum standards required under 28 U.S.C. § 1927 and (2) making up some of the value lost to the holders of legitimate claims in this case.

*Id.* at 3.

The Bankruptcy Judge's overall assessment of Grossman's role in the Chapter 11 case was clear:

> The actions of Grossman throughout the pendency of this case rise to the level of vexatious conduct designed to delay, multiply and increase the cost of the proceedings in this case. It is not one particular filing or the actions of Grossman in one hearing during the pendency of this case. Instead, it is the pervasive and constant behavior of Grossman over the course of the four plus years since he was admitted pro hac vice to this Court. The conduct of Grossman that is the basis for this Court's issuance of sanctions is detailed in the Court's March 28, 2013 Opinion. The conduct taking place after that date has been consistent with his prior patterns and is detailed herein.

*Id*. at 4. The decision found that following the original sanctions hearing "Grossman's pattern of practice continues to be the same." *Id.* at 8. The decision described the objection to the Gertrude Gordon settlement, the premature request for a credit, the multiple motions to recuse, and the motion to strike proposed findings of the Trustee as examples of this continuing conduct. The bankruptcy court also denied the most recent recusal motion.

On September 10, 2013, Grossman filed a motion to reconsider four discrete trial rulings. The rulings were (1) the denial of Grossman's motion to strike portions of the Trustee's proposed findings of fact and conclusions of law as addressing issues the court had ordered "closed"; (2) objection to the testimony of Mazur as being argument; (3) a denial of Grossman's motion to strike Mazur's testimony to lay a foundation for a purported summary that was not introduced into evidence; and (4) sustaining a work product objection to Grossman's cross-examination of the Trustee. That motion was denied.

On December 16, 2013, Grossman appealed the following orders: (1) the Sanctions Opinion; (2) the Supplemental Sanctions Opinion; (3) the December 2, 2013 order denying the motion to reconsider rulings from the supplemental sanctions hearing [Order Denying Motion to Reconsider Trial Rulings, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 1058]; (4) the order denying a motion for amendment of the bankruptcy court's September 5, 2013 orders approving interim fees for the Trustee and Trustee counsel. [Order Denying Motion for Amendment, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 1059]; and (5) the judgment for the $207,004 in sanctions [Entry of Judgment, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 1059].

V. Post-Judgment Discovery and Collection Issues Relevant to the Second Appeal

Following the entry of the sanctions judgment, the Liquidation Trustee served Grossman with interrogatories and document requests.

While the sanctions judgment, never stayed, was on appeal with this Panel, the Trustee filed two new motions with the bankruptcy court. The first motion sought to employ two law firms as special counsel to attempt to collect the Grossman judgment on a contingent fee arrangement. The motion noted Grossman was a resident of either New York or Florida and practiced law in both states. Further, the Trustee expected Grossman to be "highly resistant to collection efforts." The second motion sought to compel Grossman to respond to written discovery and in addition appear for a debtor's examination pursuant to Ohio Revised Code § 2333.09 and Federal Rule of Civil Procedure 69.

Grossman argued that (1) the post-judgment discovery would prejudice him with other counsel and his clients; (2) that the judgment was "invalid"; (3) the judgment ended the bankruptcy court's jurisdiction and a subpoena was required; (4) the retention of New York counsel made it unfairly burdensome to participate in discovery in Ohio; (5) the discovery constitutes an invasion of privacy; (6) pursuit of post-judgment discovery would frustrate his ability to prosecute the sanctions appeal; (7) the discovery sought confidential information that would expose Grossman to, among other things, identity theft or hacking and (8) the disclosure of documents with Grossman's social security number would violate the Social Security Act. The response did not specifically address the retention of the special counsel except as to its effect on the Trustee's discovery requests.

Following a hearing, the bankruptcy court entered an order compelling discovery and Grossman's participation in the debtor's examination. Order Granting Motion of the Liquidation Trustee to Compel Dennis Grossman: (A) to Respond to Written Discovery Requests, And (B) to Appear for a Debtor's Examination, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 1111. Pursuant to the order, responses to the written discovery were due by March 19, 2014 and the debtor's examination was to be completed by March 29, 2014. The bankruptcy court also entered an order granting the Liquidating Trustee's application to retain special counsel to pursue collection of the sanctions from Grossman. Order Approving Application of the Liquidation Tr. to Employ Borges & Assocs., LLC and Rosenfeld Stein Batta, P.A. as Special Counsel Pursuant

to Section 327(E) of the Bankruptcy Code, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 1112.

On March 26, 2014, Grossman timely appealed both orders.

## DISCUSSION

I.      <u>28 U.S.C. § 1927 and the Inherent Authority of the Bankruptcy Court under § 105 of the Bankruptcy Code Both Provide Legal Bases for Sanctioning Grossman</u>

The Panel will first address the bankruptcy court's $207,004 sanction award under 28 U.S.C. § 1927 and then the inherent authority of the bankruptcy court to issue those sanctions under 11 U.S.C. § 105(a). Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Case law is split as to whether bankruptcy courts are "court[s] of the United States" and, therefore, whether bankruptcy courts may sanction counsel under § 1927. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008) (finding bankruptcy courts had such authority and discussing cases on both sides of the issues). However, the Sixth Circuit Court of Appeals has affirmed a sanctions order of a bankruptcy court based, in part, on § 1927 and found bankruptcy courts had authority under that section. *Maloof v. Level Propane Gasses, Inc.*, 316 F. App'x 373, 376 (6th Cir. 2008).[18]

Sanctions are warranted under § 1927 if counsel "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009) (citation omitted). Sanctions require "more than negligence or incompetence" but "something less than subjective bad faith." *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 276 (6th Cir. 2010) (citation omitted). Sanctions under § 1927 may not be imposed because a claim was ultimately unsuccessful. An attorney that reasonably believes his claim is meritorious is not

---

[18] In her decision denying Grossman's motion to withdraw the reference, the district court also determined that the bankruptcy court had statutory authority under 28 U.S.C. § 1927 and rejected Grossman's argument that constitutional authority was lacking due to *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

subject to sanctions. *Ridder v. City of Springfield*, 109 F.3d 288, 297-98 (6th Cir. 1997). "Discrete acts of vexatious conduct should be identified and a determination made whether they were done in bad faith or, even if bad faith was not present, whether they multiplied the proceedings pursuant to 28 U.S.C. § 1927." *Riddle v. Egensperger*, 266 F.3d 542, 556 (6th Cir. 2001) (quoting *In re Ruben*, 825 F.2d 977, 990 (6th Cir. 1987)). As further explained by the Sixth Circuit:

> Litigation conduct is reviewed "for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." *Jones,* 789 F.2d at 1230. Absent a showing of bad faith, sanctions may be imposed "at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder,* 109 F.3d at 298, *quoting Jones,* 789 F.2d at 1230. "[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder,* 109 F.3d at 298. "An attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Id.* at 299. Simple inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927. *In re Ruben,* 825 F.2d at 984. "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* "A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *Id.* at 988.

*Id.* at 553.

The purpose of sanctions under § 1927 is "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, LTD. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1230-31 (6th Cir. 1986)). "A sanctioned attorney is thus required to personally satisfy the excess costs attributable to his conduct." *Id.* (citing *Ruben*, 825 F.2d at 983). "A court may include in the sanctions awarded under § 1927 the "costs, expenses, and attorneys' fees" that the party awarded sanctions incurred in obtaining the award." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298 (11th Cir. 2010) (quoting 28 U.S.C. § 1927). However, "when a court metes out a sanction, it must exercise such power with restraint and discretion." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) (citing *Chambers v. Nasco*, 501 U.S. 32, 44 (1991)).

The bankruptcy court found that sanctions were justified for all the attorney fees spent by the Committee, and subsequently the Trustee, in ensuring the disallowance of the Gordon Claim.[19]  As will be explained, the bankruptcy court concluded that the Gordon Claim theories espoused by Grossman had no legitimate basis and were pursued in bad faith and vexatiously in order to increase administrative expenses for the Liquidation Trust and thereby coerce the Trustee to settle.

It is important to note that sanctions under the bankruptcy court's inherent powers requires a finding of bad faith.  *Runfola & Assocs. v. Spectrum Reporting II*, 88 F.3d 368, 375 (6th Cir. 1996); *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229-30 (6th Cir. 1984).  However, the award of sanctions under § 1927 is appropriate "when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' . . . [or] when an attorney knows *or reasonably should know* that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims. . . ."  *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir. 2000) (citations and internal quotation marks omitted).  In *Red Carpet Studios Div. of Source Advantage*, *Ltd.*, the Sixth Circuit Court of Appeals stated that sanctions under § 1927 may be issued only when the attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings."  465 F.3d 642, 646 (6th Cir. 2006).  The Bankruptcy Judge found Grossman engaged in a course of "vexatious conduct designed to delay, multiply and increase the cost of the proceedings in this case," a finding that would meet either standard.  Supp. Sanctions Op. at 4.  *See Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 645 (6th Cir. 2009) (attorney fees from the filing of the complaint justified when the vexatious conduct began with the complaint filing and continued throughout the case).

---

[19] Initially the Trustee also sought fees for the appellate work, but later amended his request to not include those fees.  *See Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988) ("the sanctions statutes, the rules and the case law provide for fairly clear separation between conduct on appeal sanctionable by an appellate court and conduct in the trial court sanctionable by the trial court.").  While Grossman is correct that the Trustee discussed Grossman's appeals in support of his request for sanctions, the Trustee did not ultimately seek and the Bankruptcy Judge did not award the Trustee any fees and expenses incurred for time and expenses incurred in defending the appeals.

The bankruptcy court did not review whether every individual filing was pursued vexatiously, although, as will be discussed, there are a multitude of examples given. The record is sufficient to determine the bankruptcy court acted within her discretion to sanction Grossman for all the events that occurred since he entered his notice of appearance. *See id.* The bankruptcy court determined that the award of all of the Committee's and Trustee's fees and expenses related to the Gordon Claim was justified because the entire pursuit of the Gordon Claim was premised on a meritless argument and, perhaps even more importantly, was only pursued to the extreme to coerce a settlement. The methods used for the pursuit of the Gordon Claim were a continuing act of vexatious conduct.

However, Grossman has attacked virtually everything the Committee's and Trustee's counsel and the bankruptcy court did relating to the Gordon Claim as being unnecessary, multiplicative and unreasonable – attacking the Trustee and bankruptcy court for having vacillated on the issue of whether to address the Motion to Vacate first versus proceeding to the merits of the Gordon Claim; the Committee's or Trustee's decision not to proceed with a motion for summary judgment on the merits of the Claim; and the Trustee and Court having proceeded with several bases for seeking sanctions with multiple motions for sanctions. *See* Appellant's Corrected Brief at 40-72, In re Royal Manor Mgmt., Inc., 13-8054, ECF No. 29 ("Appellant Principal Br.").

A comparison of Grossman's arguments to the record shows he is second-guessing actions of the Trustee to justify his own vexatious conduct. None of his arguments absolve him of the responsibility for this conduct. The record does not suggest that counsel for the Committee and Trustee attempted to augment their fees unnecessarily.[20] Instead, counsel

---

[20] All of the fees in question were approved by the bankruptcy court as reasonable compensation for actual and necessary legal services through the Committee's and Trustee's counsel's fee applications filed and served throughout the pendency of the case. *See* 11 U.S.C. § 330. In addition, the bankruptcy court in its Sanctions Opinion found that the Trustee's fees were "proportionate to controversies that Grossman chose to frame." Sanctions Op. at 12. In the Supplemental Sanctions Opinion, the bankruptcy court determined that the hourly rates of counsel for the Trustee were reasonable. In addition, the bankruptcy court determined that the Trustee met any burden to show how the costs related to the sanctionable conduct, calculating the amounts and identifying the bases for the charges. The bankruptcy court specifically found the testimony of the Trustee and his counsel credible. The Trustee submitted detailed fee applications as evidence during the sanctions hearings. This Panel finds the record supports all

attempted to resolve multiple disputes, even when Grossman's arguments lacked any merit, such as Grossman's objections to the Gertrude Gordon settlement. The balance of this Panel's decision further details how Grossman relentlessly pursued frivolous arguments, and vexatiously proceeded to endlessly argue minor points, and sought removal of the Bankruptcy Judge for criticizing this approach.

Grossman has also argued that the language in the order approving interim fee applications of the Trustee and Trustee counsel prejudiced his defense of sanctions. This Panel disagrees. The appeal of the order denying the motion to amend orders approving certain interim fees of the Trustee and his counsel is not well taken because those orders did not prejudice Grossman's defense of the sanctions. The bankruptcy court provided Grossman with the opportunity at the sanctions hearings to establish that the fees and expenses charged were not reasonably incurred in defending against the Gordon Claim and Grossman did not present any meaningful evidence on this issue.

The alternative basis for sanctions was 11 U.S.C. § 105 and the inherent authority of the bankruptcy court to sanction. Section 105(a) provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105.

The Supreme Court has found that federal courts have the inherent authority to sanction. *Chambers*, 501 U.S. at 44. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.*. Federal courts' inherent authority includes the right, in "narrowly defined circumstances," to assess attorney fees against counsel. *Id.* at 45. The court may do so when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal citations and quotation marks omitted). Sanctions may be appropriate when a party "shows bad faith by delaying or disrupting the litigation . . . ." *Id.* at 46

---

of the sanctions, independent of the separate orders approving fee applications to be paid by the Trust.

(quoting *Hutto v. Finney*, 437 U.S 678, 689 n.14, 98 S. Ct. 2565, 2573 (1978)). Unlike sanctions under § 1927, sanctions under a court's inherent authority requires a finding of bad faith or recklessness. *Continental Corp.*, 789 F.2d at 1230. This inherent authority extends to the bankruptcy courts. *Mapother*, 103 F.3d at 477; *Knowles Bldg. Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 203 (B.A.P. 6th Cir. 2001).

For all the reasons stated previously, the decision to sanction Grossman based on the court's inherent authority under 11 U.S.C. § 105 and 28 U.S.C. § 1927 was not an abuse of discretion.[21]

II.      The Bankruptcy Court's Conclusion that the Gordon Claim Was Frivolous was Not an Abuse of Discretion

The foundation for the sanctions against Grossman was his relentless pursuit of the Gordon Claim, not only through litigation of the substantive merits of the claim, but through repeated collateral attacks, including multiple motions seeking the Bankruptcy Judge's recusal, a motion to withdraw the reference on the morning of a significant hearing on the sanctions, an objection to the settlement of the sanctions against his former client, a motion trying to make a third-party creditor pay the Trustee's expenses, and objections to orders approving fee applications of professionals on the basis that the orders did not include Grossman's own self-serving protections. His tendency to file multiple and duplicative filings for each such matter, including sometimes "status reports" which argued the merits of his positions, further compounded the obstructive nature of this dogged pursuit. Thus, it was not simply whether certain filings or positions were frivolous – although that was a significant issue which was addressed by the bankruptcy court in its decision – it was that the theories of why the Gordons were entitled to an unsecured claim in the Chapter 11 case were frivolous and, moreover, pursued vexatiously almost without exception, including through multiple collateral attacks which forced the Committee and Trustee to expend significant resources to counter those filings.

In discussing the Agreement, Grossman argues what he refers to as "non-frivolous bases for company liability." Appellant Principal Br. at 42. For example, he notes that ¶ 3(b) provides

---

[21] Grossman argues that inherent authority and § 105 cannot be used when Bankruptcy Rule 9011 was not available because the Trustee failed to follow the procedures under Rule 9011. The Sixth Circuit has rejected this argument. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-15 (6th Cir. 2002).

for the $1 million to be an "investment in the . . . Darlington Nursing Home." *Id.* But the Agreement begins (with its title) and ends (with the signatures) with a loan between individuals. The loan is secured by an interest in "P.S. Realty"[22], not Darlington. Simply referring to isolated phrases out of context does not give Grossman's corporate liability theory merit. Similarly, the phrase "[t]he principal investment is to be returned to Gordon on or before 7/25/2002" does not show a loan by Darlington. *See id.* The $1,000,000 was to be used by Schwartz for Darlington. Next, Grossman mentions that one of the investment benefits was "10% . . . interest while the $1,000,000 is invested." *Id.* But again, the overall document shows a loan to Schwartz to be used for Darlington and was signed in that fashion.

As noted, the Agreement begins by referencing only individuals and is signed by Schwartz in their individual capacity. The Supreme Court of Ohio, as Grossman notes, has indicated that the exact form of the execution of the signature is not necessarily dispositive and the court may consider the whole instrument to determine intention as to liability. *Aungst v. Creque*, 74 N.E. 1073, 1073-74 (Ohio 1905). But he understates how significant the signatures are to an analysis of the Agreement under Ohio law. An analysis of the case law cited by Grossman shows that those cases do not support his position. In *Wells Fargo Bank, NA v. WSW Franchising, Inc.*, 2009 WL 2374559 (Ohio Ct. App. Aug. 4, 2009), the court found that the corporate president was a personal guarantor of a credit card agreement despite signing in his corporate capacity. The agreement specifically, in the clearest possible language imaginable, provided such a signature created liability for the corporation and the owners. The court held that this was consistent with Ohio law that "[a]n officer of a corporation is not personally liable on contracts for which his corporate principal is liable, unless he intentionally or inadvertently binds himself as an individual." *Id.* at *3 (citation omitted). Besides the fact that WSW Franchising addresses the issue of liability of an individual when signing in his corporate capacity, the opposite of the question relevant to this appeal, the facts in the instant case provide an ironclad agreement of liability on the part of Schwartz and not Darlington. *Baltes Comm'l Realty v. Harrison*, 2009 WL 3683681 (Ohio Ct. App. Nov. 6, 2009) is a similar decision where the individual was held liable, despite signing in his corporate capacity, because the agreement itself identified the individual as a guarantor. *See also Westgate Village Shopping Ctr. v. Parker*,

---

[22] At the hearing on the Trustee's objection to the allowance of the Gordon Claim, the bankruptcy court noted that no explanation was given as to what P.S. Realty is.

2008 WL 2221855 (Ohio Ct. App. May 30, 2008) (same proposition of law); *S-S-C Co. v. Hobby Ctr., Inc.*, 1992 WL 355205 (Ohio Ct. App. Dec. 4, 1992) (same). All of these cases are narrow exceptions to the general principle that a note signed by an officer in his corporate capacity does not create individual liability unless that liability is expressed in clear and unambiguous language. *Aungst*, 74 N.E. at 1073 (syllabus holding stating that "[a] promissory note which reads, 'Thirty days after date we promise to pay,' etc. and signed, 'The Akron White Sand & Stone Co., L.K. Mihills, Secy. & Treas., D.B. Aungst, Pres.,' is, on its face, the note of the company alone, and is not the note of L. K. Mihills and D. B. Aungst, and the latter are not personally bound thereon.").

But what about cases similar to the Gordon Claim theory – in which the signature is in an individual capacity – but corporate liability was nevertheless imposed? The legal analysis is similar. Under Ohio law, "[i]t is well-settled in the law of agency that an agent who discloses neither the existence of the agency nor the identity of the principal is personally liable in his or her contractual dealings with third parties." *Dunn v. Westlake*, 573 N.E.2d 84, 87 (Ohio 1991). Again, as in the examples previously cited, "clear and unambiguous" contract terms may overcome the form of signature. *See Norfolk S. Ry. Co. v. Jacobs*, 549 F. Supp. 2d 990, 1000 (N.D. Ohio 2008) ("The intentions of the parties that Jacob Industries, and not James Jacobs himself, be responsible for and liable on the contract is abundantly clear and carries over to the modification.").[23]

In the end, this entire line of case law cited merely stands for the common sense proposition that a signature in an individual or corporate capacity is not dispositive when the language in the document proves clear and unambiguous intent for dual liability. However, the Agreement does not provide nearly the type or quantum of evidence that would overcome the individual liability of the Schwartz, evidenced by the preface of the Agreement and the individual signatures of the Schwartz, and would establish the sole or dual liability of Darlington or any of the other Debtors.

---

[23] Grossman also cites *Federal Deposit Ins. Corp. v. Tennessee Wildcat Svcs., Inc.*, 839 F.2d 251 (6th Cir. 1988) but it concerns notes covered by the Uniform Commercial Code, the precise form of signatures for individual liability for what are claimed to be notes signed by corporate agents, and when the court could look beyond those signatures. In any event, the bankruptcy court's determination that the Agreement cannot reasonably be read to show corporate liability was within her discretion and well-supported.

Instead, the Agreement evidences a loan between family members with the consideration for that loan being a promise to repay with interest, a security interest in a non-debtor asset – "P.S. Realty," an equity interest in Darlington and a share of its profits and additional promises by Schwartz to pay certain incidental expenses and pay for nursing home care, if needed. In order to reasonably expect to overcome the Agreement beginning "Sally and Abraham Schwartz to Gertrude, David, Allison, Gordon" and ending with the Schwartz' individual signatures, the "whole instrument" would need to show clear and unambiguous language of corporate liability. It does not. Read contextually, there is not a single phrase in the document showing clear corporate liability for an unsecured loan.[24] The bankruptcy court did not abuse her discretion in finding Grossman's main argument wholly without merit nor did the Merit Opinion, incorporated into the Sanctions Opinion, misapply Ohio law.

The determination that Grossman's re-characterization argument was frivolous was also within the bankruptcy court's discretion. Grossman attempts to show the argument was not frivolous by the amount of pages the district court spent discussing it and how many factors were supportive of re-characterizing the equity as debt. However, the re-characterization argument cannot stand if the loan was between the Gordons and Schwartz and, perhaps for this reason, the Sixth Circuit Court of Appeals did not address it. It is only relevant if the overall transaction was between the Gordons and Darlington, and then, only to determine whether the $1,000,000 was given to Darlington as an investment or capital (i.e. equity) rather than a loan (i.e. debt). Moreover, the Gordons never pursued this theory of liability until the bankruptcy, did not treat the Agreement as a loan to Darlington for tax purposes, and agreed to be paid subsequent to all creditors in the event of a sale. At most, the Gordons had what amounted to a preferred equity position in Darlington, but not an unsecured debt.

The record also supports the bankruptcy court's conclusion that Grossman did not provide significant evidence during the Merit Hearing to support any other theory of allowance.

Based on the foregoing, the record is sufficient to show that the bankruptcy court did not abuse its discretion in concluding that the Gordon Claim was premised on frivolous legal theories.

---

[24] Grossman also provides examples from outside the Agreement, but, as noted, he stipulated at the hearing that the Agreement was clear and unambiguous and parol evidence was not needed.

III.     The Bankruptcy Court's Determination That Grossman Vexatiously Pursued the Gordon Claim and Pursued Frivolous Arguments was not an Abuse of Discretion

Grossman vexatiously pursued arguments and filed documents throughout the litigation that were frivolous.   Particularly based on the deferential standard of review afforded the bankruptcy court, there is more than a sufficient basis to affirm the sanctions.

All of the objections to the allowance of the attorney fees of professionals after the Gordon Claim were disallowed and the repeated objections to the Gordon Claim settlement were frivolous.   It should have been clear that none of these motions, nor the orders granting these motions, prejudiced Grossman and, further, he lacked standing to file these objections on his own behalf.   But Grossman persisted in making these objections repeatedly, including arguments about how his due process would be prejudiced based upon the particular language chosen in proposed orders.   The Panel finds the language chosen only clarified those orders and did not impact the sanctions issue.

A detailed review of the record shows that Grossman repeatedly interjected substantive arguments previously briefed into routine procedural motions.   In one instance, the Trustee was forced to respond to such arguments contained within an agreed motion for a continuance.   These types of filings, by forcing a response, drained the Liquidation Trust of funds by unnecessarily raising administrative expenses.   He filed multiple status reports to the same effect.

The request for a "credit" in the Gertrude Gordon settlement order was frivolous and pursued vexatiously.   Prior to being sanctioned, Grossman essentially wanted an advisory opinion before that issue was ripe.   His arguments about being concerned about laches or waiver ring hollow.   Also, as explained later, his substantive argument about a setoff was not supported by the case law he cited.

At the hearing on the New Claim Motion, despite the motion being denied, Grossman was plainly told he could pursue alternative legal theories.   He appealed anyway and disingenuously claimed confusion when none reasonably existed.   He accused the bankruptcy court of bias for criticizing his meritless arguments.   On appeal, the district court and the Sixth Circuit Court of Appeals concluded, as does this Panel, that, contrary to Grossman's continued assertions, there was no "confusion" that prejudiced his clients' rights to pursue alternative legal arguments.

Grossman frivolously argued that he was denied due process because he was not entitled to file a post-hearing brief concerning the Gordon Claim. First, it was his responsibility to ensure he understood all court orders prior to the hearing, including the bankruptcy court's order requiring that proposed findings of fact and conclusions of law be filed prior to the hearing. Given such a requirement, Gordon had the opportunity to provide the bankruptcy court with legal authority for the propositions which he was espousing and a post-hearing brief was unnecessary. Second, litigants have no due process right to submit post-hearing briefs. Those decisions are left in the discretion of the bankruptcy judge presiding over the case. The record shows that every legal issue related to the objection to the Gordon Claim had been briefed well beyond what most litigants in bankruptcy courts ordinarily would do and the opportunities which Grossman had to brief such issues exceeded those which most practitioners would expect or receive.

Grossman unnecessarily repeated arguments time and again. As just one example, his voluminous filings concerning an expert witness were beyond what was reasonable and were vexatious. Grossman has taken the position this witness should have been allowed to testify to explain specialized terms. An exception is recognized to the parol evidence rule under Ohio law for this purpose, but when Grossman entered the stipulation during the hearing he failed to reference such an exception. Having not raised the expert witness issue at the time of the stipulation and having agreed to the stipulation, Grossman had no cause to raise arguments concerning parol evidence. Despite all of this, Grossman sought to have the Trustee pay the witness's travel expenses.

He filed repeated motions for recusal and re-raised the same essential arguments, even after the district court issued a decision finding the Bankruptcy Judge had no discernable bias. He filed a motion to withdraw the reference immediately prior to a sanctions hearing. He frivolously argued at that same hearing that his motion to withdraw the reference, without any ruling by the district court, somehow divested the bankruptcy court of its subject matter jurisdiction. He also frivolously asserted the sanctions issues should be decided by a federal judge outside the Northern District of Ohio because the Bankruptcy Judge was the "Chief Judge of the District." Grossman's argument that Judge Gaughan's decision regarding sanctions barred further sanctions is belied by a simple reading of the language used in her decision. As this

decision details in the recusal section, many of his arguments take statements out of context to create a distorted impression of the record.

He frivolously argued that the Hochman Trust, a creditor, should bear the Liquidation Trust's administrative expenses. He had no legal authority whatsoever to support this argument and wasted counsel's time and judicial resources responding to this argument and his related filings. Nevertheless, he compounded the frivolousness by vexatiously pursuing a motion to reconsider that ignored the basis for the bankruptcy court's decision.

All these arguments that Grossman pursued, and others described in this decision, support the sanctions decision of the bankruptcy court. This Panel finds no abuse of discretion.

IV.    <u>The Specific Bases for Sanctions were Sufficiently Delineated in the Bankruptcy Judge's Decision</u>

Grossman argues that the bankruptcy court failed to articulate the specific bases for sanctions against him. However, the bases for the sanctions may be found in the two sanctions decisions. The bankruptcy court was clear that the Gordon Claim theories lacked merit and, in addition, were pursued vexatiously. The decisions conclude that, perhaps motivated by his contingent fee arrangement, Grossman sought to use the Committee's concern for the bankruptcy estate and, later, the Trustee's concern for an efficient administration of the Liquidation Trust, to force a settlement. This conclusion was articulated, without any ambiguity, in the Sanctions Opinion:

> In short, Grossman well understood that his effort to convert the Gordons' claim against their aunt and uncle into a claim against the bankruptcy estate was delaying the distribution of approximately $750,000 to holders of allowed claims, while also causing the erosion of funds available for distribution due to the fees that the Liquidation Trust was incurring when the [sic] his counsel responded to Grossman's ever swelling and often frivolous filings. He compounded his absence of compelling arguments with needless multiplication and repetition of specious arguments. If an opportunity presented itself (or could be fabricated) to file a pleading, Grossman took it whether he had something new to say or not. He also repeatedly sought to depose lawyers from Brouse and McDowell. It appears that he sought to lever the collective desire for efficient administration that bankruptcy seeks to afford claim holders to gain recognition of a claim that had no merit. It appears that he thought his blockades to distribution might substitute for the lack of merit of the claims that he advanced. This Court can think of no other reason that he petitioned for *certiorari* on a settled issue of state law that had been so clearly articulated in Judge Sutton's opinion for the Sixth Circuit panel.

Sanctions Op. at 7.

Grossman makes much of the fact that the Sanctions Opinion did not cite any Ohio law, but it fully incorporated the Merit Opinion, which did cite Ohio law and, as discussed, shows why the bankruptcy court did not abuse her discretion in reaching the conclusion that the Gordon Claim had no reasonable chance of allowance. In addition, the Sanctions Opinion lists a series of arguments Grossman raised that were frivolous such as the theory of the Gordon Claim itself, and explains the repetitive nature of his filings. The Supplemental Sanctions Opinion provided further examples. The bankruptcy court was not required to review every document filed and every argument made by Grossman in the case and separately find them to be frivolous.

V.   Grossman was not Denied Due Process Concerning the Issues to be Addressed at the Sanctions Hearings

Grossman argues that he was not put on notice that all of his filings concerning the Gordon claim were subject to the sanctions motion. On December 11, 2012, following the Supreme Court's denial of the writ of certiorari which rendered the disallowance of the Gordon claim a final non-appealable order, the Trustee filed a renewed motion for sanctions. According to Grossman, that motion only sought sanctions for specific items. Grossman responded to those specific items and understood the hearing was limited to those items. However, the Trustee's motion does not support Grossman's position. It was clear from the motion that the Trustee believed the entire pursuit of the Gordon claim was "frivolous," was intended to "vexatiously multiply these proceedings" and was "intentionally geared to harass the Trustee and his counsel, and to significantly increase the costs of these proceedings thereby forcing a settlement." The Liquidation Trustee's Renewed Mot. for Sanctions Pursuant to this Court's Inherent Power Under 11 U.S.C. § 105(a), and Under 28 U.S.C. § 1927 at 2, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 953. In short, the Trustee argued the Gordon Claim was, from the very beginning, "meritless." While the motion also alleges many discrete filings and positions to be frivolous, those examples are in addition to the Trustee's position that the entire pursuit of the claim – and thus every filing related to it – was premised on sanctionable legal positions. The conclusion of the motion presses the point further: "[S]anctions should be awarded against Gertrude Gordon and Attorney Grossman because they have acted vexatiously and in bad faith throughout these proceedings, and have abused the bankruptcy process." *Id.* at 34. Finally, the motion attaches billing statements related to all the Gordon Claim fees and expenses and seeks

recovery of all those amounts expended by the Committee and Trustee as sanctions. Grossman was given fair notice of the allegations against him and was not denied due process.

VI.     Grossman was not denied "Equal Justice" by the Striking of His Reply Brief or the Decision to Allow the Trustee to File an Updated Sanctions Motion One Day Late

Grossman vociferously argues that he was denied "equal justice" because the bankruptcy court enforced a deadline against him while allowing the Trustee to file a sanctions motion one day late. The deadline enforced against him was his reply brief to the New Claim Motion which was filed two days late by rule and one day late based upon an agreed order entered into by the parties. The Judge's ruling was explained during the hearing:

> THE COURT: Well, the arguments -- at this point we're dealing with a claim that was filed. An objection was filed. No response to the objection. The objection is sustained. An order goes on sustaining the objection. And then comes a motion to vacate that order based upon some -- some – something that was excusable. And quite frankly, this Court continues to reserve the right to deal with this claim based on that and that alone. In what we thought was the interest of economy we went to the merits. And again, the proliferation of issues in this case is, at least at certain times, completely inappropriate. I made very clear the deadlines for briefing on this matter. It is my normal procedure to say to counsel I discourage reply briefs. If there is an issue that's been raised in the response that could not have been anticipated, you can file the reply brief but you have to do it by X date. You filed a reply brief which, quite frankly, I haven't read. One of my law clerks has read it. I haven't read it. I don't intend to read it. It was two days out of rule and it is struck. And I would strongly urge you not to bill your clients for the reply that you gave to the motion to strike because deadlines in this Court mean something and this [is] a case about deadlines, among other things, and you seem to think that they're wholly and completely negotiable to your convenience and they are not.
>
> MR. GROSSMAN: That's not true, Your Honor.
>
> THE COURT: Sir, sir, I've ruled. The motion to strike is granted. Period.
>
> MR. GROSSMAN: Your Honor, I just –
>
> THE COURT: Sir, I do not want to hear another word about that. There was a deadline set. I'm not going to read the motion. I'm not going to read the reply brief. It has been reviewed by one of my law clerks. And in terms of the criteria that I apply with respect to, you know, does it address any issue that could not have been addressed in the initial brief, the assessment I got was no, it doesn't. The issues could have been briefed initially, probably were briefed initially. No

> reason to take up the time of this Court with the reply brief. I did read the motion to strike and the response thereto and the motion to strike is granted.
>
> We're going to proceed with this case in a rules based fashion. Ad [sic] now please tell me what discovery, what additional discovery you believe you need.

Partial Tr. of May 12, 2009 Hr'g at 28 – 29, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 566.

In essence, the bankruptcy court determined that, particularly in light of the fact the reply brief did not raise any new issues, it was appropriate to strike the brief as beyond rule time. A bankruptcy judge generally has broad discretion in such decisions and her decision that the computer problems did not warrant extra time was within her discretion. Grossman compares this situation to the decision of the Bankruptcy Judge to allow the Trustee to file a sanctions motion one day late. (This motion included additional fees since the issue had been held in abeyance by the pursuit of the appeals of the disallowance of the Gordon Claim). In a footnote to the Supplemental Sanctions Opinion, the Bankruptcy Judge stated:

> The renewed sanctions motion is a summary and update of the filing from October 21, 2009 through February 10, 2010 relating to the request for sanctions against Grossman and/or Gertrude Gordon . . . . Grossman has argued that the renewed sanctions motion was not filed timely. The renewed sanctions motion was filed within 14 days after the expiration of the stay of the Sixth Circuit's mandate. Therefore, the Court finds that the deadline as set by this court, not be [sic] rule of statute was met by the Liquidation Trustee. The renewed sanctions motion was filed timely.

Supp. Sanctions Op. at 4, n.3. The renewed sanctions motion was not timely filed and the finding otherwise is clearly erroneous. The mandate terminated on November 26, 2012 and, therefore, the renewed sanctions motion was to be filed no later than December 10, 2012. It was filed one late, on December 11th. The Trustee erroneously believed the 3 day "mailbox rule" in Bankruptcy Rule 9006(f) applied. However, that rule only applies when the response time is counted from service. In such a situation, the motion may only be permitted if there exists excusable neglect on the part of the filer. Fed. R. Bankr. P. 9006(b)(1). Grossman argues excusable neglect should not apply and he is being denied "equal justice."[25]

---

[25] The Trustee argues that, since this motion was a renewal of the original sanctions motion, any error is harmless. See Fed. R. Civ. P. 61 (applicable by Fed. R. Bankr. P. 9005) ("At

The parties do not dispute that the Trustee missed the deadline due to a misinterpretation of the "mailbox rule", but dispute whether excusable neglect could allow the one-day tardy filing in these circumstances, which would provide an alternative basis for the bankruptcy court's ruling. The Supreme Court has stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Svcs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 113 S. Ct. 1489, 1496 (1993). However, each circumstance is fact specific. Grossman takes the position that excusable neglect may not be based on ignorance of the rules.

The case law Grossman cited addresses statutes of limitation, specific federal rules or policy issues that the relevant order in this appeal does not implicate. *Carlisle v. United States*, 517 U.S. 416, 418, 116 S. Ct. 1460, 1462 (1996) addressed whether a district court had "authority to grant a postverdict motion for judgment of acquittal filed one day outside the time prescribed by Federal Rule of Criminal Procedure 29(c)." In that instance, the Supreme Court found that the language of that rule did not provide any basis for such a late filing. *United States v. Locke*, 471 U.S. 84, 105 S. Ct. 1785 (1985) addressed a specific statutory filing deadline under the Federal Land Policy and Management Act. *Cook v. Comm'r of Social Security*, 480 F.3d 432 (6th Cir. 2007) addresses a specific limitations statute for applying for social security disability benefits. *Merriweather v City of Memphis*, 107 F.3d 396 (6th Cir. 1997) addressed a one-year limitations statute to file a § 1983 action. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000) addressed a statute of limitation under Title VII. *See also Johnson v. U.S. Postal Service*, 863 F.2d 48, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (table decision) (plaintiff's late appeal to the EEOC ultimately resulted in a dismissal of a Title VII complaint for failure to exhaust administrative remedies); *Watson v. Brady*, 9 F.3d 1548, 1993 WL 469078 (6th Cir. Nov. 12, 1993) (table decision) (the filing of an employment discrimination

every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). Specifically, the Trustee takes the position he could have proceeded for all the sanctions awarded based on the original sanctions motion, the supplement to that motion and the court's show cause sanctions order. The renewal of the sanctions motion concerned fees and filings subsequent to the original sanctions decision, but the Panel agrees the error is harmless because the renewed sanctions motion was not truly a new motion.

complaint against the federal government was dismissed for failure to follow the 30-day statutory limitation). *FHC Equities, LLC v. MBL Life Assurance Corp.*, 188 F.3d 678 (6th Cir. 1999) addressed a late appeal. *In re KMart Corp.*, 381 F.3d 709 (7th Cir. 2004) concerns an affirmance of a decision to deny a proof of claim filed after the Chapter 11 bar date, which has policy implications for all creditors and parties in interest not present here. *See also In re Sterling Rubber Prods. Co.*, 316 B.R. 485 (Bankr. S.D. Ohio 2004) (similar).[26]

No per se rule exists preventing the application of excusable neglect to this fact pattern. The motion was a renewal of the original sanctions motion delayed when the disallowance of the Gordon Claim was appealed. It did not involve a jurisdictional rule, or even a claim processing deadline of some policy import. The bankruptcy court made it clear that the sanctions issue needed to be addressed and raised it sua sponte. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1991) ("district courts have wide discretion to manage their own dockets and to decide issues which have consumed considerable resources . . . ."). Assuming that the harmless error doctrine does not apply, had the bankruptcy court determined that the late filing was due to excusable neglect, the decision would have been within her discretion. There was no unfair prejudice to Grossman, the renewed sanctions motion was meritorious and the cause of the one-day delay, although a misunderstanding of a procedural rule, was inadvertent and not in bad faith. The Panel may affirm the bankruptcy court based on alternative legal grounds. *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994).

As to the broader comparison to the striking of the reply brief, that decision did not deny Grossman a chance to prosecute his motion and was based on specific circumstances. The decision to deny the Trustee any opportunity to fully prosecute his sanctions motion is of an

_____

[26] Grossman has argued that the bankruptcy court's retroactive changing of the filing deadline was an ex post facto violation because 28 U.S.C. § 1927 has "penal and quasi-criminal" aspects to it. *Stalley ex rel. U.S. v. Mountain States Health Alliance*, 644 F.3d 349, 352 (6th Cir. 2011) (sanctions under § 1927 are in part punitive). Since this Panel finds the one-day delay either harmless error or excusable neglect, the point is moot. Also, the attorney discipline cases cited address lack of notice or substantive legal standards being changed after the fact. *See, e.g. In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222 (1968). The other case cited, *Stogner v. California*, 539 U.S. 607, 123 S. Ct. 2446 (2003), addresses the resurrection of an otherwise time-barred criminal prosecution. The deadline in this case did not change substantive law, or a statute of limitation or even a claim-processing deadline; it was imposed by an order providing for the re-activation of the already pending issue of sanctions after the appeals on the merits of the Gordon Claim were disposed of through a final order.

entirely different order. The bankruptcy court had no obligation to treat every tardy filing the same way, regardless of the circumstances, particularly when the ruling would deprive a party of any ruling on the merits and the sanctions issue originally was raised by the Bankruptcy Judge. There is an enormous difference between striking a reply brief and denying any hearing on the merits of a sanctions motion that renewed a pending motion. These decisions were years apart, have little relationship to one another and Grossman's "late is late" analysis cannot withstand scrutiny.

For these reasons, Grossman's argument about the denial of "equal justice" is not well taken.

VII.    The Bankruptcy Judge's Decision to not Limit the Sanctions Based on the Failure of the Trustee to File Summary Judgment was not an Abuse of Discretion

Grossman argues that the Trustee failed to mitigate damages by not filing for summary judgment at an earlier date. Grossman cites *Riddle v. Egensperger*, 266 F.3d 542, 553-54 (6th Cir. 2001) for the proposition that sanctions are generally improper when a successful motion could have avoided the bulk of the fees which are sought. *See also Ruben v. Warren City Sch.*, 825 F.2d 977, 988 (6th Cir. 1987) (failure to file a motion to dismiss precludes sanctions based on a groundless claim).

The convoluted circumstances surrounding the Gordon Claim litigation do not support an argument that the sanctions should be reversed because the Trustee failed to mitigate. The decision whether to file a motion for summary judgment or litigate the issue at a hearing was not based on the type of clear fact pattern as the precedent cited. Summary judgment may not have resolved other theories raised by the Amended Claim and New Claim Motion. Against this backdrop, the Trustee had to consider whether the bankruptcy court would agree that the Agreement was clear and unambiguous, which was only stipulated to during the Merit Hearing. More to the point, this litigation became entangled in unusual discovery issues and appeals and an extraordinary volume of motions for a dispute involving a single unsecured proof of claim. Often, bankruptcy hearings concerning an allowance of a proof of claim are fairly straightforward proceedings. The Trustee, more so than other litigants, must balance a multitude of issues in a collective proceeding. Under such circumstances, the Panel is loath to make a hind-sighted critique of counsel's litigation strategy and to, in effect, penalize the creditors of the

Liquidation Trust, unless that strategy only increased fees without a reasonable purpose. As previously explained, those circumstances do not exist in this case.

VIII. Grossman is not entitled to a Credit Based Upon the Gertrude Gordon Settlement

Grossman argues he was entitled to a $49,313.50 credit or setoff for the funds paid in the Gordon settlement that "overlapped" with the judgment against him.[27] He argues that this credit prevents a "double recovery" by the Trustee. In denying the credit, the bankruptcy court determined that "there is no basis for reducing the sanction against Grossman by that settlement amount." Sanctions Op. at 8. The bankruptcy court noted that the filing of the redacted proof of claim was an independent basis to sanction Gertrude Gordon. In addition, the bankruptcy court noted that Grossman did not begin to represent Gordon until three months after the filing of the proof of claim. Moreover, the bankruptcy court found that the Trust was harmed at an amount greater than the bankruptcy court sanctions so over-recovery was not a concern.

Grossman cites *BP Exp. & Oil Co. v. Maint. Svcs., Inc.*, 313 F.3d 936 (6th Cir. 2002) and *E.D.S. Corp. v. W.A. Foote Mem'l Hosp., Inc. (In re Foote Mem'l Hosp./PCIS Litig.)*, 25 F.3d 406 (6th Cir. 1994). The *BP* decision determined that, under Ohio statutory law, a non-settling party in tort is entitled to a set-off for the amount paid to the claimant by a settling party for the same injury. *Id.* at 942. The court noted that closely related to that principle is the rule that an injured party who receives full compensation is not entitled to further compensation from another defendant. *Id.* However, the court noted that neither the statutory nor the common law rule applies unless there has been a determination of the settling defendant's liability. *Id. Foote Mem'l*, 25 F.3d at 410, refers to the same "one satisfaction" rule in the context of "common damages."

Even assuming for argument that the legal principles in this case law apply to federal sanctions, Gertrude Gordon settled her sanctions without a determination of liability. It was a mutual release without findings. In addition, the settlement did not include "common damages" with the sanctions judgment against Grossman. The sanction allegations against Gertrude Gordon included filing a fraudulent proof of claim. If proven, the bankruptcy court could have sanctioned Gertrude Gordon, regardless of whether the Trustee had spent attorney fees directly

---

[27] The Gordon settlement was $50,000 but Grossman backs out $686.50 for billing on the Gordon Claim litigation prior to Grossman entering his appearance in the case.

related to that filing. Without a finding of liability, a setoff or credit to Grossman cannot be applied.

IX.   The Denial of Grossman's Motion for Reconsideration Was Not an Abuse of Discretion

Grossman raised four issues in his motion for reconsideration that all arose during the supplemental sanctions hearing. First, Grossman moved to strike portions of the Trustee's proposed findings because they addressed "closed" issues that were resolved by the court at the January 15, 2013 sanctions hearing. Specifically, Grossman cites a statement by the bankruptcy court at the hearing concerning Grossman's objection to the Gertrude Gordon settlement. At the hearing, the bankruptcy court appeared to be trying to impress upon Grossman that issues from the January 15, 2013 sanctions hearing would be separately determined and that record was "closed." Therefore, the Gertrude Gordon settlement was irrelevant to the sanctions issues facing Grossman. The Bankruptcy Judge stated:

> Mr. Grossman, I'm going to recount the recent chronology. The Court – there was a – the Court had a hearing, I believe it was on January 15th. It was an all day evidentiary hearing with respect to the Liquidation Trustee's request for sanctions . . . . But there was an all day hearing and that record is closed. And that matter is under advisement.

Tr. of Hr'g Feb. 12, 2013 at 6, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 993. Grossman takes this statement out of its context and argues that the Trustee's proposed findings of fact included time periods from the "closed" hearing. The bankruptcy court was free to ignore any of the proposed findings (or merely consider those findings as background) and the decision concerning supplemental sanctions was not based on a re-opening of the sanctions issues previously determined, but a continuation of Grossman's actions after that hearing. The Judge's denial of the motion to strike was not an abuse of discretion.

Second, Grossman objects that attorney Mazur gave argument, rather than testimony, from the witness stand and other portions of her testimony were foundation for a summary that was never introduced. As the trier of the fact and the arbiter of the law, a bankruptcy judge can separate argument from evidence and give little weight to evidence of marginal relevance. The Supplemental Sanctions Opinion does not credit argument as facts. Assuming any error in admitting Mazur's testimony, it is harmless. Grossman argues third that the bankruptcy court erred by prohibiting cross-examination as to how specific language Grossman wanted in the

Gordon settlement order would have prejudiced the Trustee. The court sustained an objection to the questioning based upon the work product privilege. Grossman then argues that the privilege was waived because the direct examination of Mazur included a discussion of the negotiation with Grossman over the proposed language. That testimony had little meaning because the objections to the Gertrude Gordon settlement were frivolous anyway. Further, Grossman lacked standing to object to the settlement because he is not a beneficiary of the Liquidation Trust and, at that time, did not represent a beneficiary of the Trust. Grossman also had not yet been sanctioned. In any event, the bankruptcy's court's distinction between the basic facts of the negotiation and delving into a lawyer's legal impressions and reasoning was within her sound discretion.

X.    The Bankruptcy Judge's Decision to Deny the Motion to Recuse Was Not an Abuse of Discretion

A.    Legal Standard for Recusal of a Bankruptcy Judge

A federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Further, a judge should disqualify herself for "personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Bankruptcy Rule 5004(a) states that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. P. 5004(a).

Recusal is mandatory when, based on an objective standard of a reasonable person with knowledge of all the facts, the Bankruptcy Judge concludes that her impartiality is reasonably placed in question. *Barna v. Haas (In re Haas)*, 292 B.R. 167, 175-76 (Bankr. S.D. Ohio 2003). However, a federal judge also has a mandatory duty not to recuse unless that standard has been met. *Id.*

Expressing an opinion about litigation is not a reason for recusal. *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."). The Court has

stated that "*[n]ot* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after being confirmed as federal judges, sometimes display." *Id.* at 555-56. Rather, bias must either be based on an extrajudicial source, which is not alleged, or because it is undeserved or excessive in degree or the behavior is "so extreme as to display clear inability to render fair judgment . . . ." *Id.* at 550-51. *See also Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 417 (6th Cir. 2005) (affirming bankruptcy judge's denial of motion to recuse when the record lacked "concrete examples of hostility.").

Although Grossman raised recusal concerns in this litigation on multiple occasions, the only order on appeal is the March 2013 order denying his motion for recusal. Grossman sought recusal based upon assertions that 1) the Bankruptcy Judge required him to answer, on the record, whether he would make a "substantial contribution" to settle the sanctions motion; 2) the Bankruptcy Judge "repeated expressions of hostility" toward him concerning his appeals and 3) the Bankruptcy Judge became a "judge in her own case."

B.    The "Substantial Contribution" Colloquy Does Not Provide a Sufficient Basis for Recusal

On the day that the Bankruptcy Judge approved the settlement with Gertrude Gordon, the "substantial contribution" comment was made by the Bankruptcy Judge to explore with the parties whether settlement discussions might be productive to avoid the further expenditure of resources by the parties and the court with respect to the sanctions motion. The Bankruptcy Judge had presided over the bench hearing concerning significant possible sanctions against Grossman. That contested matter was under advisement. The Bankruptcy Judge attempted to encourage a settlement, suggesting it would require a "substantial contribution" from Grossman. The question is whether a reasonable observer would question her partiality. The exchange appears to be an attempt to advise Grossman that a "significant contribution" might be less than what the Bankruptcy Judge, having heard the evidence as the determiner of both the facts and the law, might render against him. It also may have been an attempt by the Bankruptcy Judge to inform Grossman that she thought that the Trustee would not accept a de minimis payment to settle the sanctions motion, so it was not worth further delaying resolution of the matter if he was not going to make more than a de minimis offer. The incident does not reflect a bias that would justify recusal. The bankruptcy court did not mediate the dispute or engage in settlement

discussions between the parties. *Compare Becker v. Tidewater, Inc.*, 405 F.3d 257, 260 (5th Cir. 2006) (judge should recuse himself from being a fact finder when he mediated a settlement conference) and *Tucker v. Colloway County Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir. 1998) (judge voluntarily recused because he had been involved in settlement discussions and could not conduct bench trial).[28]  The Bankruptcy Judge's decision to not recuse was not an abuse of discretion.

### C.     The Asserted "Repeated Expressions of Anger and Hostility" Do Not Support Recusal

Grossman's argument that the Bankruptcy Judge made "repeated expressions of anger and hostility" toward Grossman's prosecution of the appeals of the Gordon Claim is not well taken.  In *Webster v. Sowders*, the Sixth Circuit Court of Appeals stated:

> We recognize that in the course of a lawsuit, the proceedings often take place in both the trial and appellate courts, and that some motions or other actions, such as the motion to stay the pay orders pending appeal, may have impacts at both levels. Nevertheless, the sanction statutes, the rules, and the case law provide for fairly clear separation between conduct on appeal sanctionable by the appellate court and conduct in the trial court sanctionable by the trial court.  Just as it appears clear that a trial judge cannot sanction a party or lawyer for taking an appeal, we do not believe that it is proper here for the District Judge to threaten to sanction the defendants or their attorney for filing a motion to stay his order pending appeal on the grounds that the underlying appeal is frivolous. The only purpose of such threat is to prevent an appeal. Appeals of district court orders should not be deterred by threats from district judges.

846 F.2d 1032, 1040 (6th Cir. 1988) (footnote and citations omitted).  However, the Bankruptcy Judge did not threaten Grossman if he appealed nor did she rule on a motion to stay (or anything else) interfering with the appeals.  She negatively commented, as part of her larger discussion of Grossman's pattern of conduct throughout the litigation, upon the appeals as part of her consistent view of Grossman's filings as attempting to force a settlement.[29]  Grossman argues the

---

[28] Grossman also references a later conference, in which he did not participate, in which the Bankruptcy Judge generically asked the Trustee's counsel a single question about whether settlement discussions with Grossman were pending.  The counsel said no and the discussion ended there.  While Grossman claims he was "shocked" by this event upon later reading it in a transcript, this extremely abbreviated colloquy does not show prejudice or bias.

[29] The Trustee took the position that appellate filings were relevant to establishing the vexatiousness of Grossman's course of conduct; however, none of the sanctions award includes Trustee attorney fees or expenses incurred in defending the appeals.

Bankruptcy Judge "took sides" in the appeals and her comments "destroys public confidence in the impartiality of the judiciary and warrants recusal." Grossman cites to *Nicodemus v. Chrysler Corp.*, 596 F.2d 152 (6th Cir. 1979), but that case concerned a judge with a clear and expressed bias. *Id.* at 155-56.

Grossman exaggerates the Bankruptcy Judge's statement in the Sanctions Opinion by redacting portions of her comments. The impression sought is that the Bankruptcy Judge invited the appellate court to award further sanctions. Appellant Principal Br. at 24. She stated that, if the Trustee did not seek further sanctions, the final judgment would be $150,000, "subject to any amount which an appellate court might decide to add, in the event of an appeal of that final judgment." The record is clear that earlier in that decision, the Bankruptcy Judge acknowledged the sanctions would not include fees relating to any appeal because the Trustee determined that he would not seek such fees at the bankruptcy court level. The quotation is best read as another acknowledgment that the decision does not address such fees and that issue may be the province of appellate courts. The other "invitation" mentioned by Grossman is less an invitation when the entire statement is read, but more another explanation that the bankruptcy court is addressing fees at the bankruptcy court level, not appellate fees. *Compare* Appellant Principal Br. at 24 (Grossman's redacted version of the quotation) with Supp. Sanctions Op. at 8, n.4. Grossman is ascribing a motive which the weight of the record cannot support.

Grossman's other examples also fail to support his narrative. At a January 8, 2013 discovery hearing, the Bankruptcy Judge stated that "dividends have been held hostage during this appellate process." Tr. of Hr'g at 23, In re Royal Manor Mgmt., Inc., No. 08-50321, ECF No. 965. This statement was consistent with other statements of the Bankruptcy Judge that Grossman had pursued sanctionable conduct. The statement does not threaten Grossman from appealing any issue or reflect anger or hostility. This statement should be considered in the context of a hearing resulting in a 40 page transcript during which Grossman freely interjected his opinion that the Bankruptcy Judge was largely responsible for the delays in the litigation.

At the January 15, 2013 sanctions hearing, Grossman points to the Bankruptcy Judge questioning Grossman about how many additional months that distributions to creditors were delayed by Grossman's application for writ of certiorari to the Supreme Court. Tr. of Hr'g at 145, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 981. When read in context,

Grossman was describing how the New Claim Motion was not frivolous and, as part of that, noted the Sixth Circuit stayed its decision to allow Grossman to pursue a writ of certiorari. As part of the colloquy, the Bankruptcy Judge asked about the delay by proceeding to the Supreme Court. It is unreasonable to view this statement as an expression of anger or hostility. Following that statement, Grossman and the Bankruptcy Judge continued to discuss the evidence during closing argument on a variety of points.

During a February 12, 2013 hearing on the motion to compromise the request for sanctions as to Gertrude Gordon, the Bankruptcy Judge stated that "[y]our activity in this court and other courts within the Northern District of Ohio will be judged by a review of activity." Tr. of Hr'g at 7, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 993. The statement is in context not an expression of anger or hostility nor is it a threat. The Bankruptcy Judge previously noted her view of the irony of Grossman's concern that the language in the Gordon compromise order would lead to further sanctions against him. The obvious implication was that his objections were possibly sanctionable because the settlement did not concern him. Rather than explain her comment to Grossman, the Bankruptcy Judge stated that those issues would be judged later, but the hearing that day concerned the Gertrude Gordon settlement. In essence, the Bankruptcy Judge re-focused the court and parties upon the hearing at hand and chose not to discuss what appellate courts might do, but instead stated those courts would judge it.

In the Supplemental Sanctions Opinion, the Bankruptcy Judge stated that filings related to appeals "contain largely frivolous and repetitive arguments designed to multiply and delay the ultimate resolution of this case." Supp. Sanctions Op. at 8, n.4. This statement represents the Bankruptcy Judge's view of the litigation as part of the pattern of Grossman's filings. Merely commenting on her view of these appeals did not represent a persistent pattern of hostility or anger toward Grossman nor a threat. None of the sanctions concerned fees expended by the Trustee on appeals.

The balance of the comments which concern Grossman are from the Sanctions Opinion and were appropriate. She noted that Grossman's appeals diminished the distribution to holders of allowed claims because the Trustee incurred greater attorney fees and distributions were delayed. Sanctions Op. at 4. Later, the Bankruptcy Judge wrote "[f]or more than four years and continuing to the present Grossman seemed to find any and every occasion to multiply the

ongoing proceedings." The paragraph also references the various appeals that were not included in an Appendix of his filings. *Id.* at 6. Similar statements were made about the delays to distribution and additional fees at other portions of the decision. *Id.* at 7-8 and 11. For a complete list, see the Appellant Principal Br. at 16. All these comments were appropriate for a sanctions decision.

Grossman also mentions three separate incidents, occurring over a period of 3 ½ years, in which the Bankruptcy Judge sua sponte invited the Trustee to seek sanctions. While Grossman appears to concede that sua sponte sanctions "invitations" are not per se impermissible, he states, without a citation, that "[t]hree (3) times is too much." Appellant Principal Br. at 23. Starting from the most recent, the Sanctions Opinion, the Bankruptcy Judge gave the Trustee the opportunity to file for supplemental sanctions for attorney fees and five days to make that decision. Over three years earlier, on January 29, 2010, the Bankruptcy Judge issued a sua sponte show cause order requiring Grossman to explain why he should not be sanctioned pursuant to the court's power under 28 U.S.C. § 1927 based on the findings proposed by the Liquidation Trustee. Finally, the Bankruptcy Judge invited the Trustee to seek sanctions under Bankruptcy Rule 9011 in her decision sustaining the Trustee's objection to the Gordon Claim.

The most recent mention of sanctions appears to be an attempt to fully and finally have all sanctions issues resolved by setting a final date for such motions. The first mention of sanctions was within the Bankruptcy Judge's discretion based on her views articulated in the Merit Opinion and, apparently based on issues with raising such claims under Bankruptcy Rule 9011, the Bankruptcy Judge subsequently issued a show cause under 28 U.S.C. § 1927, which was an alternative legal basis for sanctions. In the context of 4 ½ years of contentious litigation, in which the Bankruptcy Judge determined and repeatedly told Grossman that he was consistently filing frivolous documents and raising frivolous arguments, the characterization of the sanctions "invitations" as "3-fold non-stop" is disingenuous. *See* Appellant Principal Br. at 23.

D.    The Theory that the Bankruptcy Judge was "Judging Her Own Case" does not Support Recusal

Grossman attempts to frame a personal dispute between himself and the Bankruptcy Judge and reaches the conclusion that the Bankruptcy Judge was "judging her own case." Based

on established case law that a judge cannot have a material (pecuniary or otherwise) interest in the litigation, he points to the fact that the Bankruptcy Judge criticized him of delay in pursuing the Gordon Claim while, in his view, poor case management was responsible for significant delay.[30] Therefore, Grossman concludes that she should have recused herself. The case law of a federal judge having an interest in her own case bears little, if any, relationship to this case.[31] Grossman attempts to personalize this issue in a demeaning way to the tribunal and the district court rightfully rejected this argument in denying Grossman's motion to withdaw the reference.

  E.   <u>The Asserted "Misstatements of the Record" by the Bankruptcy Judge Do Not Support Recusal</u>

  As further evidence of bias, Grossman raises the fact that the Sanctions Opinion mentions that Grossman had a 40 percent contingency interest in the Gordon Claim (reduced to 30 percent after his pro hac vice privileges were withdrawn by the District Court) and this interest was not disclosed in the pro hac vice motion. Grossman believes this was intended to create a "false impression of illegality." Appellant Principal Br. at 27. The record shows that the Bankruptcy Judge ultimately concluded this fee arrangement was part of what led to Grossman's actions. He would not be paid any legal fees if he did not successfully pursue the Gordon Claim. The

---

[30] Grossman's argument in large part centers on the bankruptcy court's changing course at the outset of the Gordon Claim litigation with respect to proceeding to the merits of the Gordon Claim versus first determining the Gordon's motion to vacate the order sustaining the Trustee's objection to the Claim. Ultimately the Trustee and the Gordons resolved that issue by entering into an agreed order which granted the motion to vacate, allowing the matter to proceed to the merits of the Gordon Claim.

[31] In *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623 (1955), the Court held it was a denial of constitutional due process for a judge who presided over a Michigan "one-man grand jury" to subsequently preside over a contempt hearing arising out of that grand jury. In *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S. Ct. 1580 (1986), the Court held it was a denial of due process for an Alabama Supreme Court Justice to rule upon an appeal concerning the bad faith refusal of a health insurer to pay a claim because that Justice was pursuing litigation in an Alabama Circuit Court for bad faith refusal to pay claims, including a class action against a health insurer. In *Williams v. Anderson*, 460 F.3d 789, 813 (6th Cir. 2006), a death penalty habeas corpus decision, that panel cited *Lavoie* for the proposition that bias may include non-pecuniary factors, but ultimately held a judge need not recuse because, in his former role as a federal attorney, he received investigative reports about an organization to which the petitioner belonged. In all of these examples, the judge was involved in a former case or related litigation. Nothing of the kind exists in this record.

statements in the opinion about the fee arrangement are factually correct and Grossman ascribes to them motives that the record cannot support.

Another asserted misstatement by the Bankruptcy Judge in the record is in the Supplemental Sanctions Opinion, in which the Bankruptcy Judge commented on Grossman's characterization (in a recusal motion and reply) of her previously discussed attempt to settle the sanctions issue. The decision stated that "[t]he exchange cited to by Grossman was not as he has characterized it to be." Supp. Sanctions Op. at 6 & 7. Grossman claims that this cannot be so because he directly quoted the transcript. But the recusal motion did more than quote the transcript, and included this statement of what occurred after the colloquy regarding the settlement: "At that point, the Bankruptcy Judge abruptly left the Bench, in anger over attorney Grossman's response that she had required over his repeated objections." Mot. by Att'y Dennis Grossman *Pro Se* to Recuse Bankruptcy Judge at 5, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 994. Since it is more than possible that the Bankruptcy Judge was referencing this statement and this characterization is not reviewable anywhere in the appellate record, her general statement cannot be a basis for a determination of bias. Again, in his reply brief to the motion to recuse, Grossman re-emphasizes the same point: "[the Bankruptcy Judge's] anger at attorney Grossman was obvious and undisputed." Reply in Support of Mot. by Att'y Dennis Grossman *Pro Se* to Recuse Bankruptcy Judge at 3, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 998. The Trustee did not dispute this argument for a specific reason and that reason was not his agreement with Grossman's characterization. As stated in the Trustee's short response brief: "Mr. Grossman's Motion to Recuse is replete with statements that are inaccurate, unprofessional and disrespectful. The Trustee will not 'take the bait' and therefore has chosen not to individually address his outlandish statements." The Liquidation Trustee's Br. in Opposition to Dennis Grossman's Mot. to Recuse Bankruptcy Judge Shea-Stonum in Sanctions Proceedings at 2 n.3, In re Royal Manor Mgmt., Inc., No. 08-50421, ECF No. 996. The characterization of the Judge's "anger" as "undisputed" is disingenuous at best.

The next asserted misstatement is that the Bankruptcy Judge referred to the "substantial contribution" settlement question to Trustee counsel as a "general inquiry regarding settlement." However, the record is cited in the Bankruptcy's Judge's decision and there is no intentional

misstatement. The term "general inquiry" is a matter of reasonable interpretation – as is so many of Grossman's concerns – and is not a reason to find bias sufficient to justify recusal.

The next asserted misstatement ultimately is an argument about semantics that misses the point of the Bankruptcy Judge's concern. The Supplementary Sanctions Opinion discussed Grossman's objection to the Gertrude Gordon settlement. He states this was not an objection to the settlement, but instead, in essence, an attempt to obtain comfort type language that such settlement would not lead to further sanctions against him. Grossman believes the Bankruptcy Judge misstated the record by stating he opposed or objected to the settlement itself. The reality is Grossman filed an objection to approval of the settlement without specific language in the order that he wanted. The record is clear as to why he objected, which as discussed elsewhere, was based on a frivolous argument. It is of no moment that he was not objecting to the specific terms of the settlement itself. His objection required a further hearing and expense for the Trustee. The statement that Grossman objected to the Gertrude Gordon settlement is not inaccurate.

The next asserted misstatement is that the Bankruptcy Judge created a "false impression of repetitiveness" by stating in her Supplemental Sanctions Opinion that Grossman had filed 3 opposition responses to the Gertrude Gordon settlement motion, which were characterized as "nothing more than a restatement of prior arguments made in prior filings." Supp. Sanctions Op. at 6. Grossman states he was responding to three separate revised orders. First, the Bankruptcy Judge ultimately found Grossman lacked standing for any of the objections. Second, all the filings do include the same essential argument with specific comments on various iterations of proposed orders. The third response was filed the morning of the hearing. The Bankruptcy Judge was entitled to conclude these filings were repetitive, particularly since the objection itself was frivolous.

Next, Grossman asserts that the Bankruptcy Judge gave an appearance that Grossman's filings were excessive by noting he had filed a 46-page brief in opposition to the supplemental sanctions motion, but failed to mention the Trustee's motion was 45 pages. However, Grossman takes the comment out of its context. The Judge noted in the same paragraph that Grossman later, on January 13, 2013, filed an "opposition as a matter of right" to the reply brief of the Trustee that repeated arguments in the 46-page brief. Grossman mischaracterizes the record with

this example and fails to state the Judge's actual concerns in her Supplemental Sanctions Opinion. Grossman's comparison with the Trustee's brief is a straw man argument.

Finally, Grossman states the Bankruptcy Judge misstated the record in her Supplemental Sanctions Opinion by indicating that Grossman "filed a motion to strike the Liquidation Trustee's proposed findings of fact and conclusions of law." Supp. Sanctions Op. at 7. Grossman had moved to strike parts of the findings of fact and conclusions of law because, in his view, the findings and conclusions addressed issues previously determined through the first sanctions hearing and the Judge had ruled those issues "closed." This statement in the Supplemental Sanctions Opinion, for what it is worth, is not completely correct. However, more salient to the decision is the Judge's determination that the motion to strike, regardless of the breadth, "has no basis in law or fact." *Id.* The Bankruptcy Judge continued: "It appears to this Court to be merely reflective of Grossman's inability to let pass any opportunity to reiterate and restate arguments that have already been fully briefed." *Id.* at 7-8. The Judge cited the relevant documents from the record and the decision showed no intention to stray from the record. Moreover, the notion that the Bankruptcy Judge, when deliberating sanctions, could not consider any past history because the previous proceeding was "closed" is itself an unnecessary vexatious argument.

Grossman characterizes these as an "extraordinary series of record misstatements" which showed bias indicating recusal is appropriate. For the reasons just detailed, the statements mostly represent exaggerations and mischaracterizations of the record by Grossman or non-material factual errors. None of these statements, individually or in the aggregate, demonstrates bias which justified recusal.

XI. The Orders Relating to the Trustee's Attempt to Execute Upon the Judgment against Grossman Were Not an Abuse of Discretion

Grossman argues that the Trustee's service of the requests for post-judgment discovery was improper because a subpoena or other formal process was required. Federal Rule of Civil Procedure 69(a)(2), applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7069 and 9014, provides: "In the aid of judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – *as provided in these rules* or by the procedure of the state

where the court is located." (Italics added). Neither Federal Rule of Civil Procedure 5 nor Federal Rule of Bankruptcy Procedure 9014(b) requires a subpoena and the regular mail service Grossman received was sufficient. The court maintained jurisdiction over the post-confirmation Liquidation Trust which includes liquidating this asset. All judgments which would benefit the Trust's beneficiaries must be attempted to be enforced to complete these Chapter 11 cases. Even if that were not true, Grossman has submitted himself to the jurisdiction of the bankruptcy court and the Trustee is not required to re-establish personal jurisdiction over Grossman in order to pursue discovery. *See N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (federal courts maintain jurisdiction to enforce a judgment on appeal if it is not stayed, but may not alter or expand the judgment).

Grossman argues that "fundamental fairness" should require staying discovery because of delays in adjudicating his sanctions appeal. However, the procedure for any party to seek a stay pending an appeal of a judgment is mandatory. *See* Fed. R. Bankr. P. 8005 ("A motion for a stay of the judgment, order or decree of a bankruptcy judge . . . or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. . . . A motion for [stay pending appeal] . . . may be made to the . . . bankruptcy appellate panel, but the motion shall show why the relief . . . was not obtained from the bankruptcy judge.")[32] See also Fed. R. Bankr. P. 7062 ("[T]he appellant may obtain a stay by supersedeas bond . . . ."). Additionally, as a matter of "fundamental fairness", delay in post-judgment discovery delays the collection of the judgment and, in this instance, the ability to distribute those funds to the beneficiaries of the Liquidation Trust. Grossman also argues the Trustee's retention of special counsel will force him to respond to discovery in three different venues: Ohio, Florida and New York. However, the bankruptcy court was within its discretion to determine that special counsel was needed to collect a judgment that the Trustee believed Grossman was not going to willingly pay. Even assuming Grossman had standing to object to the retention of special counsel without being a Trust beneficiary, having no assurance Grossman will pay the judgment willingly, Grossman's challenge to the amount of effort the Trustee deems necessary to collect it is unconvincing.

Grossman argues the order compelling him to appear at the debtor's examination was invalid. However, this type of examination is an entitlement of a judgment creditor pursuant to

---

[32] Effective December 1, 2014, the rule for staying a judgment of a bankruptcy court pending an appeal may be found in Federal Rule of Bankruptcy Procedure 8007.

Ohio Revised Code § 2333.09 and the Bankruptcy Judge's authority to apply this Ohio statute is found in Federal Rule of Civil Procedure 69(a)(2).

Grossman raises as error the Bankruptcy Judge's refusal to issue a protective order. Grossman was concerned that private financial and tax information could be disclosed. The bankruptcy court reasoned Grossman could redact account numbers and social security numbers and, moreover, the discovery would not be filed with the bankruptcy court. Grossman argues that documents could be filed later. However, Grossman may address that issue with any other tribunal in which this collection matter may land. As far as documents being shared with third parties, Grossman never proposed in any motion a specific list of parties to whom access to the documents would be appropriately limited. The Bankruptcy Judge was within her discretion to decline to issue a protective order.

Grossman argues that the interrogatories exceed the number allowed without leave of court. Federal Rule of Civil Procedure 33(a)(1) limits interrogatories to 25, "including all discrete subparts" without leave of court or stipulation. The court found the interrogatories were within 25, but regardless of this finding, would have allowed the greater number. This determination was within the bankruptcy court's reasonable discretion. *See Harhara v. Norville*, 2007 WL 2897845 (E.D. Mich. Sept. 25, 2007) (related subparts may be treated as part of the primary question and not a "discrete subpart.").

## CONCLUSION

The orders appealed from in both of Grossman's appeals are affirmed.